LOUIS GREBE v. GEORGE W. SWORDS, as Receiver of the First National Bank of Rugby, North Dakota.

JOHN GREBE v. GEORGE W. SWORDS, as Receiver of the First National Bank of Rugby, North Dakota.

(149 N. W. 126.)

**Mortgages — failure of consideration — act to cancel — grantee's transfer to bank of which he was cashier — estoppel.**

    1. Action to cancel and satisfy of record certain mortgages upon the ground

---

Note.—A well-recognized exception to the general rule that a principal is chargeable with the knowledge acquired by his agent exists where the officers of a bank are personally interested in a transaction, to which the bank is also a party in in-

of failure of consideration for the notes secured thereby. Such instruments were executed and delivered by plaintiffs to one A. H. Jones, who, prior to their maturity and for full value, sold and indorsed them to the First National Bank of Rugby, of which he was at the time its cashier. The receiver of such bank defends upon the alleged ground: 1st. That there was not a failure of considera. tion. 2d. That the bank acquired such paper in due course, and 3d. That plaintiffs are estopped, as against the receiver, from urging any infirmity in the notes. Upon a trial *de novo* in this court, the findings and conclusions of the trial court favorable to plaintiffs on all issues are sustained.

**Conveyance by deed — in trust — mortgages — security — bail bonds.**

2. The contention that Jones acquired title to the land involved through one Henry Grebe, the former owner, who gave him a warranty deed, and that he subsequently sold the land to the plaintiffs, taking the notes in controversy in payment of the purchase price, is held without support in the proof. While such deed was given by Henry Grebe to Jones, and a written agreement in form entered into between them purporting to fix the terms and mode of payment of the purchase price, the undisputed testimony discloses that no sale was con. templated, the intention being merely to transfer such title to Jones in trust with the understanding that he should deed the same to the plaintiffs, who are brothers of Henry Grebe, which trust Jones thereafter executed by giving deeds of the land to the plaintiffs; and the undisputed testimony is to the effect that the notes and mortgages executed and delivered by them to Jones were intended merely as security and indemnity to Jones against loss for furnishing certain bail bonds and agreeing to make certain advancements in connection with criminal proceedings pending or about to be commenced against Henry Grebe.

**Parol evidence — admissible to show real nature of transactions — written contract — evidence to disprove its existence — not to contradict its terms — admissible.**

3. Parol evidence was admissible to show the real nature of the transaction between Jones and the Grebes. The rule excluding parol evidence does not apply where it is offered, not for the purpose of contradicting or varying the effect of a written contract of admitted authority, but to disprove the legal existence or rebut the operation of the instrument; and in order to determine the validity of the writing the true character of the transaction may always be shown.

**Notes and mortgages — consideration — contingent loss — no loss occurring — consideration failed.**

4. The notes and mortgages were not given in consideration of Jones' promise

terest, but some cases do not recognize this exception to the general rule where such officer is the sole representative of the bank in the transaction. The conflicting authorities are reviewed in a note in 29 L.R.A.(N.S.) 558.

The general question of parol evidence to verify, add to, or alter a written contract, is the subject of a note in 17 L.R.A. 270.

to furnish bail and make advancements for Henry Grebe, but rather to secure and indemnify him against any future contingent loss or liability growing out of these matters; and no such loss or liability having occurred, the consideration failed.

**Trust — breach of faith — fraud to negotiate the paper — burden of proof on holder to show title in due course.**

5. Under the facts it was a breach of faith amounting to fraud upon Jones' part to negotiate this paper to the bank. This being true, his title thereto was defective under the express provisions of § 6357, Rev. Codes 1905, and under § 6361, Rev. Codes, the burden shifted to defendant to prove that the bank acquired title to the notes in due course.

**Jones as an individual sold the paper — as cashier of the bank, he purchased it — infirmity — knowledge of — imputed to the bank.**

6. In negotiating the paper Jones acted in a dual capacity. As an individual he sold the paper, and as cashier of the bank he purchased it. His knowledge of the infirmity in his title was therefore imputed to the bank. Emerado Farmers Elevator Co. v. Farmers Bank, 20 N. D. 270, cited and followed.

**Plaintiff's acts in renewing the paper with the bank — do not constitute estoppel.**

7. Appellant's contentions that plaintiff's acts in renewing the paper to the bank, and in permitting it to remain as an asset of such bank until a receiver was appointed, should operate to estop them from urging any infirmity in such paper, are held without merit.

Opinion filed October 1, 1914.

Appeal from District Court of Pierce County, *A. G. Burr*, J.

Actions in equity to cancel certain mortgages of record for failure of consideration of the notes secured thereby.

From a judgment in favor of each of the plaintiffs, defendant appeals. Affirmed.

Statement by Fisk, J.

The record on this appeal presents two distinct suits,—one by John Grebe and the other by Louis Grebe, as plaintiffs against George W. Swords, as receiver of the First National Bank of Rugby, North Dakota. These actions were brought to cancel and satisfy of record certain mortgages executed by the Grebes upon the lands described in

their respective complaints, upon the ground of a failure of consideration of the mortgages and the notes secured thereby.

By stipulation the two actions were tried together with the understanding that separate judgments should be entered. At the conclusion of the trial in the district court, findings of fact and conclusions of law favorable to the plaintiff in each case were made, and separate judgments entered granting the relief prayed for in the complaints, from which judgments these appeals are prosecuted, the appellant demanding a trial de novo of the entire case in this court, and, by stipulation of counsel, the two causes which involve the same facts and legal questions may be tried anew in this court as one case, but with the understanding that separate judgments shall be entered in each action.

The salient facts are not in dispute, and they are narrated in appellant's brief, in substance, as follows: On July 7, 1907, one Henry Grebe was arrested in Pierce county on a criminal charge, and a few days later was rearrested on a charge of conspiracy. He had difficulty in obtaining bonds in both cases, and began negotiations with one A. H. Jones, then cashier of the First National Bank of Rugby, North Dakota, to procure the necessary bonds for his release, which negotiations resulted in their signing a written instrument, Exhibit "1," as follows:

This agreement made and entered into on this 19th day of July, A. D. 1907, by and between A. H. Jones, party of the first part, and Henry Grebe, party of the second part,

Witnesseth: Whereas, Henry Grebe, party of the first part, has on this day sold to A. H. Jones, party of the first part, certain lands in Pierce county, N. D., more particularly described in that certain warranty deed executed by me upon this 19th day of July, A. D. 1907, for the sum of $5,100, it is hereby agreed that the payment for the same shall be made as follows, to wit:

(1) That the said A. H. Jones shall deduct from said purchase price of $5,100 whatever sums as attorneys' fees or expenses he shall pay or cause to be paid on my behalf for my defense in any criminal action that is now started or shall hereafter be started against me.

(2) That said A. H. Jones shall deduct from the said purchase price the amount of any bonds that he may sign for me in connection with said criminal actions.

(3) That said A. H. Jones shall, after deducting said amounts heretofore described, execute a promissory note payable to the said Henry Grebe for the balance of said purchase price payable November 1, 1908, drawing interest at the rate of 7 per cent per annum.

It is further agreed that at any time that said A. H. Jones is released from said bonds heretofore mentioned that he shall pay to said party of the second part whatever he has deducted by reason thereof, except that he is not required to pay the same before November 1, 1908.    Said A. H. Jones to use his best judgment concerning expenses and hiring of attorneys for as heretofore mentioned.

A. H. Jones.<br>Henry Grebe.

At the same time Henry Grebe deeded to Jones all of his real estate, consisting of the northeast quarter of section fifteen (15), and the southwest quarter of the northeast quarter, the northwest quarter of the southeast quarter, the south half of the southeast quarter of section eleven (11), all in township one hundred fifty-six (156), range seventy-three (73), also the south half of the northwest quarter, the north half of the southwest quarter of section eleven (11), township one hundred fifty-five (155), range seventy-three (73), which deed was filed for record and duly recorded on said date in the office of the register of deeds of Pierce county.

Thereafter and on August 8, 1907, Jones deeded to the plaintiff, Louis Grebe, brother of Henry Grebe, certain of the lands above described, and Louis Grebe executed and delivered to Jones two promissory notes, one for the sum of $2,500 and the other for the sum of $1,500, which notes were secured by a mortgage on one of such quarter sections of land thus conveyed by Jones to Louis Grebe, and also upon another quarter owned by Louis Grebe and which constituted his homestead.    A chattel mortgage of all the crops raised on this land was also executed and delivered to Jones by Louis Grebe.    The mortgage upon the real estate was given to secure not only the note for $2,500, but also a $1,500 note, which was transferred by Jones to the Barton State Bank, which latter note is in no way involved in this action.

On the same date of the above transactions with Louis Grebe, Jones conveyed the remainder of the land, which had been deeded to him.

by Henry Grebe, to the plaintiff John Grebe, and at the same time John Grebe and wife executed and delivered to Jones their promissory note for the sum of $2,600, and a mortgage securing payment of the same; also a mortgage upon the crops to be raised on the land mortgaged. Two days later and before maturity, the $2,500 note executed by Louis Grebe was indorsed and transferred by Jones to the First National Bank of Rugby, and Jones received credit therefor on the books of the bank, and subsequently checked out and used the money. In the following January this $2,500 note was renewed by Louis Grebe, giving to the First National Bank a new note for $2,614.65.

On the same date of such renewal by Louis Grebe, the $2,600 note given by John Grebe and wife to Jones was renewed by giving a new note for the balance then due, amounting to $955.30, together with a mortgage securing payment of the same. This $2,600 note had not been transferred to the bank, and no part of the same had been among the assets of the bank until January 27, 1908, the date such renewal note was executed, but such renewal note for $955.30 was made directly to the bank and placed among its assets, and Jones was thereupon credited with such amount on the books of the bank, and subsequently used the money. When this renewal note was made the original note was past due.

Jones signed bonds in two criminal actions against Henry Grebe, aggregating $7,500, and a bond for $5,000 in a criminal action for John Grebe, and his liability under such bonds continued until the dismissal of the actions against them on January 25, 1909, at which time they were dismissed for want of prosecution.

*Bangs, Netcher, & Hamilton,* for appellant.

Contemporaneous instruments and having relation to the same subject-matter must be taken as parts of one transaction and construed together, to show the true contract between the parties. Myrick v. Purcell, 95 Minn. 133, 103 N. W. 902, 5 Ann. Cas. 148; Sutton v. Beckwith, 68 Mich. 303, 13 Am. St. Rep. 344, 36 N. W. 79; McNamara v. Gargett, 68 Mich. 455, 13 Am. St. Rep. 355, 36 N. W. 218; Howell v. Howell, 29 N. C. (7 Ired. L.) 491, 47 Am. Dec. 335; Brackett v. Edgerton, 14 Minn. 174, Gil. 134, 100 Am. Dec. 211;

White v. Miller, 52 Minn. 367, 19 L.R.A. 673, 54 N. W. 737; 2 Century Dig. Contracts, § 746a.

All their negotiations, talk, or conversation prior and leading up to an agreement were merged in the two written instruments, and such instruments only, express their will and intention. Rev. Codes 1905, § 5333; Reeves v. Bruening, 13 N. D. 163, 100 N. W. 243; Mott v. Richtmyer, 57 N. Y. 59.

It is the duty of every contracting party to learn and know the contents of the contract before he signs and delivers it. 9 Cyc. 388; Little v. Little, 2 N. D. 175, 49 N. W. 736; Quimby v. Shearer, 56 Minn. 534, 58 N. W. 155; Albrecht v. Milwaukee & S. R. Co. 87 Wis. 105, 41 Am. St. Rep. 30, 58 N. W. 72; Deering v. Hoeft, 111 Wis. 339, 87 N. W. 298; Fivey v. Pennsylvania R. Co. 67 N. J. L. 627, 91 Am. St. Rep. 445, 52 Atl. 472, 12 Am. Neg. Rep. 313; Greenfield's Estate, 14 Pa. 496; Upton v. Tribilcock, 91 U. S. 45, 50, 23 L. ed. 203, 205.

Parol evidence of an agreement which has been reduced to writing is inadmissible. Atwood v. Cobb, 16 Pick. 227, 26 Am. Dec. 657; Waddle v. Owen, 43 Neb. 489, 61 N. W. 731; Blossom v. Griffin, 12 N. Y. 569, 67 Am. Dec. 75; Dudgeon v. Haggart, 17 Mich. 280; Goddard v. Foster, 17 Wall. 123, 21 L. ed. 589; Springsteen v. Samson, 32 N. Y. 706; Clark v. Woodruff, 83 N. Y. 522; Adair v. Adair, 5 Mich. 204, 71 Am. Dec. 779; Cooper v. Berry, 21 Ga. 526, 68 Am. Dec. 468; Sullivan v. McLenans, 2 Iowa, 437, 65 Am. Dec. 780; MacKinnon Boiler & Mach. Co. v. Central Michigan Land Co. 156 Mich. 11, 120 N. W. 26; Pack v. Thomas, 13 Smedes & M. 11; 51 Am. Dec. 135; Rev. Codes 1905, §§ 5342, 5343.

The burden of proof of a want of consideration sufficient to support an instrument lies with the party seeking to invalidate it or avoid it. Rev. Codes 1905, § 5326; Bray v. Comer, 82 Ala. 183, 1 So. 81; Gibbons v. Dunn, 46 Mich. 147, 9 N. W. 140; Jackson v. Wood, 88 Mo. 76; Roberts v. Derby, 68 Hun, 299, 23 N. Y. Supp. 34; Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. ed. 112; Allen v. Chicago, B. & Q. R. Co. 82 Neb. 726, 23 L.R.A.(N.S.) 278, 118 N. W. 655.

The evidence required to warrant cancelation of deed must be clear and convincing. 2 Pom. Eq. Jur. § 859; 3 Greenl. Ev. § 363; Armor v. Spaulding, 14 Colo. 302, 23 Pac. 790, and cases therein cited; Jones, Mortg. § 335; Holmes v. Fresh, 9 Mo. 201; Jones v. Brittan, 1 Woods,

667, Fed. Cas. No. 7,455; Jasper v. Hazen, 4 N. D. 6, 23 L.R.A. 62, 58 N. W. 454; Howland v. Blake, 97 U. S. 624, 24 L. ed. 1027.

The presumption is in favor of the written instrument. If the proofs are not clear and convincing against it, the instrument will be upheld. Kent v. Lasley, 24 Wis. 654; Satterfield v. Malone, 1 L.R.A. 35, 35 Fed. 445.

The intention of the parties must be found from the language of the instrument. Smyth v. Fogle, 150 Iowa, 161, 129 N. W. 735; Barkhausen v. Chicago, M. & St. P. R. Co. 142 Wis. 292, 124 N. W. 649, 125 N. W. 680; McAlpine v. Millen, 104 Minn. 289, 116 N. W. 583; Campau v. National Film Co. 159 Mich. 169, 123 N. W. 606; Krbel v. Krbel, 84 Neb. 160, 120 N. W. 935.

Matters not apparent on the face of the paper, such as fraud, duress, or failure of consideration, are equities which cannot avail against a holder in due course. Cristy v. Campau, 107 Mich. 172, 65 N. W. 12; First Nat. Bank v. Green, 43 N. Y. 298; Jamieson v. Heim, 43 Wash. 153, 86 Pac. 165; Buzzell v. Tobin, 201 Mass. 1, 86 N. E. 923; Massachusetts Nat. Bank v. Snow, 187 Mass. 159, 72 N. E. 959; Fearing v. Clark, 16 Gray, 74, 77 Am. Dec. 395; Rea v. McDonald, 68 Minn. 187, 71 N. W. 11; Clark v. Skeen, 61 Kan. 526, 49 L.R.A. 190, 78 Am. St. Rep. 337, 60 Pac. 329; Manhattan Sav. Inst. v. New York Nat. Exch. Bank, 170 N. Y. 58, 88 Am. St. Rep. 640, 62 N. E. 1081; Yates v. Spofford, 7 Idaho, 737, 97 Am. St. Rep. 267, 65 Pac. 501; Borgess Invest. Co. v. Vette, 142 Mo. 560, 64 Am. St. Rep. 567, 44 S. W. 754; Fitzgerald v. Barker, 96 Mo. 661, 9 Am. St. Rep. 375, 10 S. W. 45; Bedell v. Herring, 77 Cal. 572, 11 Am. St. Rep. 307, 20 Pac. 129; Nashville Trust Co. v. Smythe, 94 Tenn. 513, 27 L.R.A. 663, 45 Am. St. Rep. 748, 29 S. W. 903; Carpenter v. Longan, 16 Wall. 271, 21 L. ed. 314; Hern v. Nichols, 1 Salk. 289; Wilson v. Denton, 82 Tex. 531, 27 Am. St. Rep. 908, 18 S. W. 620; New Orleans Canal & Bkg. Co. v. Templeton, 20 La. Ann. 141, 96 Am. Dec. 385; Woodworth v. Huntoon, 40 Ill. 131, 89 Am. Dec. 340; Davis v. Bartlett, 12 Ohio St. 534, 80 Am. Dec. 375.

Fraud is no defense against a bona fide indorsee for value and before maturity. Bedell v. Herring, 11 Am. St. Rep. 307, and note, 77 Cal. 572, 20 Pac. 129.

The remedy of the maker of a promissory note which has been sold

by the payee to an innocent purchaser is an action for damages for the amount of the note and interest. Myrick v. Purcell, 95 Minn. 133, 103 N. W. 902, 5 Ann. Cas. 148; Citing Decker v. Mathews, 12 N. Y. 313; Comstock v. Hier, 73 N. Y. 269, 29 Am. Rep. 142; Farnham v. Benedict, 107 N. Y. 159, 13 N. E. 784; Fahey v. Esterley Mfg. Co. 3 N. D. 220, 44 Am. St. Rep. 554, 55 N. W. 580; Canham v. Plano Mfg. Co. 3 N. D. 229, 55 N. W. 583.

A failure of consideration after a bona fide transfer does not affect the character of the purchaser, although he had full knowledge of the original consideration for which the note was given. 7 Cyc. 947; Splivallo v. Patten, 38 Cal. 138, 99 Am. Dec. 358; Rublee v. Davis, 33 Neb. 779, 29 Am. St. Rep. 509, 51 N. W. 135; Davis v. McCready, 17 N. Y. 230, 72 Am. Dec. 461; Miller v. Ottaway, 81 Mich. 196, 8 L.R.A. 428, 21 Am. St. Rep. 513, 45 N. W. 665; McNight v. Parsons, 136 Iowa, 390, 22 L.R.A.(N.S.) 718, 125 Am. St. Rep. 265, 113 N. W. 858, 15 Ann. Cas. 665; Jennings v. Todd, 118 Mo. 296, 40 Am. St. Rep. 373, 24 S. W. 148; Parker v. Sutton, 103 N. C. 191, 14 Am. St. Rep. 795, 9 S. E. 283; Hakes v. Thayer, 165 Mich. 476, 131 N. W. 174; United States Nat. Bank v. Floss, 38 Or. 68, 84 Am. St. Rep. 752, 62 Pac. 751; American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99.

Proof that a full consideration was paid for the note on its transfer prima facie establishes the fact that transfer was in due course. Hodge v. Smith, 130 Wis. 326, 110 N. W. 192; Stephens v. Olson, 62 Minn. 295, 64 N. W. 898; Fredin v. Richards, 61 Minn. 490, 63 N. W. 1031; Wedge Mines Co. v. Denver Nat. Bank, 19 Colo. App. 182, 73 Pac. 873; Cox v. Cline, 139 Iowa, 129, 117 N. W. 48; Champion Empire Min. Co. v. Bird, 7 Colo. App. 523, 44 Pac. 764.

A mere suspicion of infirmity will not constitute notice. American Exch. Nat. Bank v. New York Belting & Packing Co. 148 N. Y. 698, 43 N. E. 168; Kelley v. Whitney, 45 Wis. 110, 30 Am. Rep. 700; Jennings v. Todd, 118 Mo. 296, 40 Am. St. Rep. 373, 24 S. W. 148; Second Nat. Bank v. Morgan, 165 Pa. 199, 44 Am. St. Rep. 652, 30 Atl. 957; Chemical Nat. Bank v. Kellogg, 183 N. Y. 92, 2 L.R.A. (N.S.) 299, 111 Am. St. Rep. 691, 75 N. E. 1104, 5 Ann. Cas. 158; Johnson v. Buffalo Center State Bank, 134 Iowa, 731, 112 N. W. 165; Davis v. Bartlett, 12 Ohio St. 534, 80 Am. Dec. 375; Johnson v. Way,

27 Ohio St. 374; Green v. Wilkie, 98 Iowa, 74, 36 L.R.A. 434, 60 Am. St. Rep. 184, 66 N. W. 1046; Commercial Bank v. Burgwyn, 110 N. C. 267, 17 L.R.A. 326, 14 S. E. 623; Hardman v. Cabot, 60 W. Va. 664, 7 L.R.A.(N.S.) 506, 55 S. E. 756, 9 Ann. Cas. 1030.

The conduct of the plaintiffs had the effect of deceiving not only the bank, and the examiner, but the stockholders, depositors, and creditors of the bank, and the plaintiffs are estopped to plead or show the matters of which they complain. Skordal v. Stanton, 89 Minn. 511, 95 N. W. 449; Findley v. Cowles, 93 Iowa, 389, 61 N. W. 998; Hurd v. Kelly, 78 N. Y. 588, 34 Am. Rep. 567.

Where the maker of a note or bond allows it to be treated as an asset of the bank for three years, and the public to deal with it on that assumption until the bank became insolvent, he is estopped to set up the claim of fraud. Best v. Thiel, 79 N. Y. 15; Longmire v. Fain, 89 Tenn. 393, 18 S. W. 70; New England F. Ins. Co. v. Haynes, 71 Vt. 306, 76 Am. St. Rep. 771, 45 Atl. 221; Lyons v. Benney, 230 Pa. 117, 34 L.R.A.(N.S.) 105, 79 Atl. 250; People's Bank v. Stroud, 223 Pa. 33, 72 Atl. 341; State Bank v. Kirk, 216 Pa. 452, 65 Atl. 932; Murphy v. Gumaer, 18 Colo. App. 183, 70 Pac. 800; Pauly v. O'Brien, 69 Fed. 460.

*Guy C. H. Corliss,* for respondent.

The transfer of the notes and mortgages by Jones to the bank of which he was cashier at the time was not only in bad faith as to the makers, but the knowledge of Jones that he was committing a fraud upon the makers was imputed to the bank. Holden v. New York & El. Bank, 72 N. Y. 286; Bolles, Bkg. pp. 416–422; Niblack v. Cosler, 74 Fed. 1000, 26 C. C. A. 16, 47 U. S. App. 637, 80 Fed. 596; Emerado Farmers' Elevator Co. v. Farmers' Bank, 20 N. D. 270, 29 L.R.A. (N.S.) 567, 127 N. W. 522; Black Hills Nat. Bank v. Kellogg, 4 S. D. 312, 56 N. W. 1071; First Nat. Bank v. New Milford, 36 Conn. 93; First Nat. Bank v. Dunbar, 118 Ill. 625, 9 N. E. 186; Daniels v. Empire State Sav. Bank, 92 Hun, 450, 38 N. Y. Supp. 580; Wiggins v. Stevens, 33 App. Div. 83, 53 N. Y. Supp. 90; National Bank v. Munger, 36 C. C. A. 659, 95 Fed. 87; First Nat. Bank v. Blake, 60 Fed. 78; First Nat. Bank v. Babbidge, 160 Mass. 563, 36 N. E. 462; Cook v. American Tubing & Webbing Co. 28 R. I. 41, 9 L.R.A.(N.S.) 193, 65 Atl. 641; Morris v. Georgia Loan & Sav. Bkg. Co. 109 Ga.

12, 46 L.R.A. 506, 34 S. E. 378; Citizens' Sav. Bank v. Walden, 21 Ky. L. Rep. 739, 52 S. W. 953; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 9 Am. St. Rep. 698, 17 N. E. 496; Millward-Cliff Cracker Co.'s Estate, 161 Pa. 157, 28 Atl. 1072; Zane, Banks & Bkg. §§ 106–163.

It matters not that the maker knew the papers were carried as assets of the bank. Westwater v. Lyons, 113 C. C. A. 617, 193 Fed. 817; Agricultural Bank v. Robinson, 24 Me. 274, 41 Am. Dec. 385.

Having taken these notes with notice that there was no consideration unless Jones actually paid out some money, the bank stands in exactly the same place as Jones. 8 Cyc. 32, 33; Rev. Codes, 1905, §§ 6330, 6360.

Where a note is given as security for bail bonds furnished by the payee, there is no consideration unless the payee sustains a loss. 7 Cyc. 706; Iowa College v. Hill, 12 Iowa, 462.

FISK, J. (after stating the facts as above). There are, as the writer views it, three main propositions involved in this litigation: First, Was there a failure of consideration as to the notes and mortgages sought to be canceled? If so, then,

Second, Did the First National Bank of Rugby acquire title to such paper in due course? If not, then

Third, Are the plaintiffs estopped by their dealings with the bank from questioning the bank's or the receiver's title thereto?

These propositions will be considered in the order above mentioned.

Appellant's counsel strenuously contend that there was no failure of consideration for the notes in question, but, on the contrary, that they were given for a perfectly good and valuable consideration, and consequently enforceable as such, even in the hands of A. H. Jones, the payee. Their argument is based chiefly upon the hypothesis that Jones owned the three quarters of land covered by the mortgages, and sold the same to these plaintiffs, taking the said notes and mortgages in payment of the purchase price. They point to Exhibit 1, the contract, and to Exhibit 2, the warranty deed, both executed by the former owner of the land, Henry Grebe, and which deed purports on its face to be a deed of conveyance of such land to A. H. Jones, and which contract purports to fix the terms and method of payment of the agreed purchase price,

as conclusive evidence of Jones' ownership and right to make sales of this land to these plaintiffs.

Our first inquiry, therefore, will be directed to the true nature and legal effect of the transaction between Henry Grebe and A. H. Jones as disclosed by the record. The testimony of Grebe is positive and wholly undisputed as to the fact that a sale by him to Jones of such land was never contemplated by either Jones or himself, and such testimony is corroborated by that of his brothers, John and Louis, as well as by all the facts and surrounding circumstances disclosed, excepting the two exhibits. to which we have above referred, which, of course, create the presumption that they are what they purport upon their face to be. It is a significant fact, entitled to considerable weight, that appellant failed to call Jones as a witness at the trial. He evidently relied upon these two Exhibits, 1 and 2, as not only the best, but the sole and only competent, testimony as to the nature of the transaction. In this we think he is in error. These actions are not based on those exhibits, nor were these plaintiffs, or either of them, parties thereto. Such exhibits are only incidentally and collaterally involved in this litigation, their only relevancy being to prove a link in appellant's chain of evidence tending to establish a consideration for the notes and mortgages executed to Jones by these respondents. In other words, they merely tend to show that Jones had title to these lands, and therefore had a right to sell and convey them to Louis and John Grebe; but their evidentiary force stops here, for they in no way tend to prove that Jones in fact did sell and convey such lands to Louis and John. And the undisputed evidence is that no such sale took place. On the contrary, it clearly appears from the testimony that Jones acted merely as a conduit through which the title passed from Henry to his brothers, Louis and John, for a purpose not clearly disclosed by the record, but which Jones induced the Grebes to believe was necessary, or at least advisable. All the Grebe brothers positively testified, however, that there was no intention by such transfers to devest Henry of his interest in this property, and such testimony is undisputed. Whether owing to Henry's serious trouble involving him in criminal proceedings, the purpose was to put the property beyond the reach of his creditors, which may be easily inferred from some of Henry's testimony, or whether it was deemed necessary in order to facilitate the giving of security to enable

him to procure bail, is not clearly made to appear, nor, as we view it, is it of vital importance. In either event Jones acquired no title which he sold or could sell to Louis and John Grebe. The fact, as testified to by Henry Grebe, to the effect that he was badly scared on account of the criminal charges, and did everything which Jones told him to do, seems to be amply borne out by the record. Indeed, we are forced to the belief, from a perusal of the evidence, that the Grebes, in dealing with Jones, were at a great disadvantage and wholly incapable of protecting their rights. They were simple-minded and inexperienced, and apparently placed implicit confidence in his honesty, blindly following his suggestions. He took advantage of their situation, and wickedly betrayed the trust they so foolishly placed in him. Had Jones retained these notes and mortgages, instead of disposing of them to the bank, and were these actions against him instead of the receiver of such bank, we believe no court would hesitate to award relief to the plaintiffs. In arriving at the foregoing conclusion we have not overlooked, but have duly considered, the elementary and well-settled rules invoked by appellant's able counsel to the effect that Exhibits 1 and 2, which were made at the same time and relate to the same transaction, must be construed together as one contract; also that all preliminary negotiations leading up to the making of a written contract are merged in such contract, and parol evidence is inadmissible to vary or change the terms thereof; also the rule governing the nature and degree of proof which should be exacted by the courts before canceling solemn written instruments. While these and other rules of a similar nature referred to in appellant's brief are no doubt correctly stated by counsel, we do not deem them controlling of the rights of the parties in the case at bar. There is an exception to such rules which is equally well recognized, and which counsel have evidently overlooked. Such exception was, no doubt, made for the express purpose of dealing with cases analogous to the case at bar, and is a very wise and salutary exception, designed to relieve innocent victims of fraud and deceit by permitting them to show that it was never intended that an instrument, which purports to be a contract between them, should ever have effect as a valid and binding agreement. It would, indeed, be strange, as well as a reproach upon the law, if, as appellant's counsel contend, the instruments, Exhibits 1 and 2, must be accepted as conclusive evidence of the fact that the trans-

action between Henry Grebe and A. H. Jones on July 19, 1907, was in truth and in fact what these instruments on their face indicate it to have been. The rule to which we refer is very clearly and concisely stated in 17 Cyc. 694, as follows: "The objection to parol evidence does not apply where it is offered, not for the purpose of contradicting or varying the effect of a written contract of admitted authority, but to disprove the legal existence or rebut the operation of the instrument, and in order to determine the validity of the writing the true character of the transaction may always be shown. So, also, evidence which is offered, not for the purpose of varying or contradicting the terms of a written instrument, but to show that it was never intended to be operative between the parties, and never in fact had any legal existence as a contract or grant, is admissible." Numerous authorities are cited in the notes supporting the text. At page 722 of the same treatise it is further stated: "It is generally considered that parol evidence is admissible where it is offered, not for the purpose of varying the terms of a written contract, but for the purpose of explaining and showing the true nature and character of the transaction evidenced thereby, especially where it is plain that the language used, taken in its literal sense, does not exhibit the real transaction, or where the writing is assailed on the ground of fraud. Applications of this principle are to be found in those cases where evidence has been admitted to show that, although a writing evidences upon its face an absolute transfer of property or an absolute promise to pay money, the real transaction consisted merely in the giving of security or indemnity, or that the grantee in a written instrument, such as a deed, assignment, bill of sale, or the like, which on its face passes the title to property, took the title subject to a trust." We might cite many adjudicated cases in support of the rule as stated in Cyc., but we deem it wholly unnecessary. Our conclusion on this point is that under the testimony it is entirely clear that Jones did not acquire title to these lands from Henry Grebe, and therefore had no right to sell, and did not sell, the same to Louis and John Grebe, but on the contrary, he received the title merely in trust for the sole purpose of transferring the same to Louis and John, which trust he executed by later executing and delivering deeds to them. Therefore, we must overrule appellant's contention that the mortgages and notes involved were

given as payment for the purchase price on the sale of such land by Jones to the Grebes.

But it is also contended by appellant that the promise by Jones to furnish bail constituted sufficient consideration for the giving of these notes and mortgages by Louis and John. Such contention is, we think, unsound. Plaintiffs did not give the notes as a consideration for the promise of Jones to furnish bail and pay expenses of the defenses, but they gave them merely to secure and indemnify him against any loss which he should suffer in the future by reason of his performing such acts. The notes were not to be paid as a consideration for his promise, but only on the contingency that he advanced moneys and suffered loss on account of furnishing such bail. Under these circumstances no consideration for the notes could arise until such time as Jones was entitled to be reimbursed for advances and loss, and under this record such contingency never arose. At no time, therefore, could Jones have recovered a single dollar on these notes and mortgages. In brief, the payment of anything thereon was conditional, and such condition never arose. The case of Tronson v. Colby University, 9 N. D. 563, 84 N. W. 474, cited by appellant's counsel, is not in point. It was there merely held that a promise is a good consideration for a promise; but as we have above stated, the Grebes did not give these notes for Jones's promise to do certain things, but they were given solely as security, and to indemnify Jones against a future contingent liability or loss. The case at bar is governed, we think, by the well-settled rule stated in 7 Cyc. 706. We quote: "And in general if a note is given merely as indemnity against a loss which may ensue to the payee from a contemplated act of the maker, and the act is not done, and the liability of loss not incurred, there will be no consideration for the note."

Having reached the conclusion that Jones, the payee, could not have enforced the payment of these notes for failure of consideration, we next come to the question as to whether the bank, through its receiver, stands in a more favorable position. In other words, was the bank a purchaser of this paper in due course?

The presumption in the first instance, of course, is as appellant's counsel contend, that the bank was a purchaser of the paper in due course, the notes being negotiable in form and duly indorsed by Jones. But such presumption was rebutted when it was shown that the title of

Jones was defective, and thereafter the burden shifted to the holder to prove that he acquired the title as a holder in due course. Rev. Codes 1905, § 6361. That the title of Jones was defective cannot be doubted, for under the express provisions of § 6357, Rev. Codes, the title of one who negotiates an instrument is defective "when . . . he negotiates it in breach of faith, or under such circumstances as amount to a fraud." That it was, under the circumstances, a breach of faith amounting to fraud for Jones to negotiate these notes must, we think, be conceded. On this point, see Citizens' State Bank v. Garceau, 22 N. D. 576, 134 N. W. 882.

There is not only an entire absence of evidence that the bank in purchasing this paper did not know that the title of Jones was defective, but it affirmatively appears that in the discounting of such paper Jones, as cashier, is the only person who acted for the bank. He turned over the notes, and gave, or caused himself to be given, credit therefor on the books of such bank. He was the bank in the transaction, and whatever was done by his assistant cashier was done purely in a clerical way, under the directions of Jones, and without the exercise of any independent judgment or discretion in the matter. This being true, the knowledge of Jones as to the infirmity in this paper was the knowledge of the bank. Emerado Farmers' Elevator Co. v. Farmers' Bank, 20 N. D. 270, 29 L.R.A.(N.S.) 567, 127 N. W. 522. See also cases cited in notes in 2 L.R.A.(N.S.) 993, and 29 L.R.A.(N.S.) 558. While there is a diversity of opinion among the courts as to whether the knowledge of the bank official who deals with himself will be imputed to the bank, the apparent weight of authority appears to support the views of this court in Emerado Farmers' Elevator Co. v. Farmers' Bank, supra.

The only remaining point which requires consideration is that of estoppel. It is urged by appellant's counsel that plaintiffs, by renewing the notes after the bank acquired them, are, by reason of such acts, estopped to urge any infirmity therein. Their reasoning is that such action on their part was an affirmance and ratification of Jones' act in selling such notes to the bank. We fail to discover any room for the application of the doctrine of estoppel here. It does not appear that, on account of such renewals, the bank parted with anything or in the least changed its position to its detriment. Moreover, it could not have been misled thereby as to the character of the notes, for, as we have seen,

knowledge of the true facts was imputed to it through Jones, its cashier, long prior thereto. Jones might, with equal force, have urged an estoppel on such ground had he retained the notes in his possession. Nor are we able to see any merit in the other alleged ground of estoppel; namely, that by permitting the notes to remain in the bank after such renewals and until the receiver was appointed, such conduct "had the effect of deceiving not only the bank and the examiner, but also the stockholders, depositors, and creditors of the bank." There might possibly be some merit in appellant's contention if the facts in the case at bar brought it within the rule announced in the cases cited by counsel. Such, however, is not the fact.

The rule invoked by counsel, and which the authorities cited by them tend to support, is to the effect that when a person, for the purpose of giving a bank a false credit, executes to it commercial paper which is placed among its assets for the purpose of deceiving the bank examiner or others, he is estopped from urging any infirmity in such paper after it has passed into the hands of a receiver of such bank. But as very correctly stated in the brief of respondent's counsel, "The Grebes in giving these notes *had no thought of lending any false credit to the bank.* The original notes all ran to Jones personally. They signed such papers as Jones asked them to sign, and had no real grasp of the fact that the notes were being carried by the bank as assets of the bank. Indeed, it does not even appear that they knew that the notes appeared on the books of the bank as assets thereof. Whether the renewal notes ran to the bank was a matter that did not attract their attention, and even if they had discovered this fact it would have meant nothing to these simple inexperienced men. To a plain, ignorant farmer, Jones was the bank, and any notice that might come to the Grebe Brothers from the bank relating to these notes would not carry to their minds the thought that they had been a party to a scheme to give the bank a false credit by allowing their notes to appear upon the books as assets of the bank. Even if they had, in a vague way, realized that Jones had sold the notes to the bank, it would not be fraudulent for them to not take any action to have these false appearances altered. In fact they would have been unable to do so even if they had tried. They did not give him the notes for the purpose of having them appear on the books of the bank as assets. They were fully justified in believing that Jones, who was the bank,

would, as between him and the bank, take care of these notes if it ever became his duty to do so. If, under the circumstances of this case, the doctrine of estoppel applies, then in every instance whenever a bank fails the defense of want of consideration as against the bank can never be urged as against the receiver of the bank."

Our conclusion, after due consideration of the questions presented, is that the findings and conclusions of the trial court are in all things correct. The judgment in each case is accordingly affirmed.