# CHARLESTON.

J. A. RUSMISSELL v. WHITE OAK STAVE Co. *et al.*

and

N. RUTH, TRUSTEE, v. B. H. RAWSON *et al.*

Submitted May 1, 1917.   Decided May 8, 1917.

1.  BILLS AND NOTES—*Blank Signature—Liability.*
    The authority implied by a signature to a blank note, and the credit given, are so extensive, that the party so signing will be bound to a holder for value in due course, although such note was only authorized to be used for a purpose different from that to which it has been perverted.   (p. 406).

2.  BANKS AND BANKING—*Knowledge of Officer—Imputation to Bank.*
    The knowledge of an officer of a bank, acquired in a capacity other than as its representative, of an infirmity in commercial paper offered for discount, will not be imputed to the bank, when such official is also an officer of the corporation seeking the discount and has an interest in the transaction so adverse to the bank that there is a reasonable presumption that he will not communicate his knowledge to it.   (p. 406).

3.  BILLS AND NOTES—*Indorsement—Presentation and Notice.*
    To hold an endorser of negotiable paper liable as such, it must be presented for payment at the place of payment, when due, and due notice given to the endorser of such presentment and of its dishonor by non-payment.   (p. 408).

Appeal from Circuit Court, Upshur County.

Suit by J. A. Rusmissell against the White Oak Stave Company. Suit by N. Ruth, trustee, against B. H. Rawson and others, in each of which W. L. Armstrong, receiver of

the Farmers' Bank & Trust Company, and such company, filed a joint petition and answer, setting up a claim against the defendant Rawson and against the defendant White Oak Stave Company, and in which P. E. Wagner, receiver of the First National Bank of Sutton, and the First National Bank of Sutton, the Central Banking & Security Company, and the Drovers' & Mechanics' National Bank of Baltimore, Md., filed similar claims. Two suits by J. A. Rusmissell against B. H. Rawson and others. From a decree of the circuit court, refusing to allow their respective claims, and allowing a claim in favor of defendant Rawson, Armstrong and other claimants appeal.

*Affirmed in part. Reversed in part. Remanded.*

*Davis, Davis & Hall,* for appellant Wagner. *Merrick & Smith,* for appellant Central Banking & Security Co. *Carlyle Barton* and *Davis, Davis & Hall,* for appellants Drovers' & Mechanics' Nat. Bank of Baltimore and Wagner. *Hall Bros.,* for appellants Farmers' Bank & Trust Co. and Armstrong.

*J. M. N. Downes, Young & McWhorter,* and *H. Roy Waugh,* for appellees.

Ritz, Judge:

The defendant, White Oak Stave Company, was engaged in the business of manufacturing and selling staves. It was a corporation, all of its stock being owned or controlled by one H. H. Dean who was the president and treasurer of the company. It made a contract with the defendant B. H. Rawson to cut, saw and load for it on the railroad cars the staves from a certain tract of land, at the price of fifteen dollars per thousand. Rawson entered upon this contract and cut something like half of the timber, the stave company furnishing him money from time to time for the purpose of carrying on his operations. It appears that the arrangement was that he would draw checks upon the First National Bank of Sutton, of which Dean was vice-president, for such money as he needed, and Dean would arrange to keep enough money in the bank to Rawson's credit to meet

his requirements.  Before the operations upon this tract of
land were concluded the suit of Rusmissell against White
Oak Stave Company was brought for the purpose of winding
up its affairs and distributing its assets to its creditors.  It
seems that Rawson about this time also became embarrassed
financially and made a voluntary assignment to N. Ruth for
the benefit of his creditors.  Ruth then brough a suit against
Rawson and others to have the trust created by the deed exe-
cuted to him by Rawson administered under the direction
and advice of a court of equity.  Each of these suits was
referred to the same commissioner to ascertain and report
what assets the defendants White Oak Stave Company and
B. H. Rawson had, and the debts against them.  In each of
said suits W. L. Armstrong, Receiver of the Farmers Bank
& Trust Company, a corporation, and the said Farmers
Bank & Trust Company, a corporation, filed their joint pe-
tition and answer setting up a claim against the defendant
Rawson, and also against the defendant White Oak Stave
Company, consisting of six notes executed by Rawson to the
White Oak Stave Company, and endorsed by the White Oak
Stave Company.  P. E. Wagner, Receiver of the First Na-
tional Bank of Sutton, and the First National Bank of Sut-
ton filed an answer in each of said suits setting up a claim
in favor of said receiver against said Rawson, and also
against said White Oak Stave Company.  Part of the claim
set up against Rawson was allowed by the commissioner.
The part not allowed consists of six notes made by B. H.
Rawson and endorsed by White Oak Stave Company, and an
overdraft of $15.83 in the account of Rawson with the First
National Bank.  The appellant Central Banking & Security
Company appeared before the commissioner and offered proof
of a claim in its favor against said Rawson consisting of
two notes for the sum of one thousand dollars each, and also
a claim against the White Oak Stave Company as endorser
of said two notes, and as endorser of a note of $250.00 made
by Standard Lumber & Manufacturing Company.  The
Drovers & Mechanics National Bank of Baltimore, Mary-
land, filed a petition setting up a note of fifteen hundred
dollars made by the defendant B. H. Rawson, and endorsed

by the White Oak Stave Company, and claimed this note as a debt against both of said defendants. The commissioner declined to allow the above mentioned claims of the appellants, Drovers & Mechanics National Bank of Baltimore, Maryland, Central Banking & Security Company, P. E. Wagner, Receiver of the First National Bank of Sutton, and W. L. Armstrong, Receiver of the Farmers Bank & Trust Company, against either of said defendants. He also found that the White Oak Stave Company was indebted to B. H. Rawson in the sum of $7201.74. Exceptions were filed to the report of the commissioner in so far as he failed to allow the claims set up by the above-named parties, and also to the allowance of the claim in favor of Rawson against the White Oak Stave Company. These exceptions were overruled by the circuit court and the commissioner's report confirmed, and the said P. E. Wagner, Receiver of the First National Bank of Sutton, W. L. Armstrong, Receiver of Farmers Bank & Trust Company, Central Banking & Security Company and Drovers & Mechanics National Bank of Baltimore, Maryland, each prosecute appeals from the decree of the circuit court refusing to allow their respective claims, and allowing the claim in favor of B. H. Rawson. Rawson now contends that the notes held by appellants are forgeries, and this seems to be the only question made as to the validity of these debts.

The appellant Drovers & Mechanics National Bank of Baltimore acquired the note held by it from the First National Bank of Sutton, having re-discounted the same for that institution. The appellant Central Banking & Security Company acquired the notes held by it in like manner. These notes, together with the notes held and set up by Wagner, Receiver of the First National Bank of Sutton, were all discounted by the First National Bank of Sutton for the White Oak Stave Company. The notes held by Armstrong, Receiver of Farmers Bank & Trust Company, were discounted by that institution for the White Oak Stave Company. At the time these notes were acquired by the Farmers Bank & Trust Company H. H. Dean, the president and treasurer of the White Oak Stave Company, was the cashier of the Farm-

ers Bank & Trust Company. This bank transferred a large part of its assets to the First National Bank of Sutton and ceased doing business as a banking concern. Dean then became vice-president and the active managing officer of the First National Bank of Sutton, and the notes held by Wagner, Receiver, and by the Drovers & Mechanics National Bank of Baltimore, and the Central Banking & Security Company were discounted by this bank for the White Oak Stave Company while Dean was so actively connected with it. Of course, if these notes are forgeries as now claimed by Rawson they cannot be the basis of a claim against Rawson's estate.

The commissioner does not make any specific finding in regard to these claims, but we must assume that, they having been presented to him and he not having allowed them, he found against the contention of appellants and in favor of the contention of Rawson that these notes are forgeries; and the inquiry is, does the evidence introduced before the commissioner justify this finding? It appears that at the time the First National Bank of Sutton suspended business the national bank examiner who was present found these notes now held by Wagner, Receiver, among the assets of the bank. It is also shown that Dean, who had control of the assets of the Farmers Bank & Trust Company, produced the notes set up in this suit by Farmers Bank & Trust Company, and said to one of the directors of the First National Bank that they were part of the assets of the First National Bank| It seems now, however, that Dean was doing this to cover up his defalcations to that institution, and that in fact these notes were never transferred by the Farmers Bank & Trust Company to the First National Bank of Sutton, but were at that time, and still are, a part of the assets of the Farmers Bank & Trust Company. At any rate, while the receiver of the First National Bank at the beginning of this litigation claimed to be the owner of these notes, he now asserts no claim thereto.

At the time that the First National Bank of Sutton was closed Rawson was advised by the bank examiner in charge that the bank held between twenty-five and thirty thousand

dollars of his notes. He was also given this information by some of the directors of the bank. He did not deny the paper, but stated that he had executed from time to time notes in blank and turned them over to Mr. Dean, and that he was surprised that Dean had used them to that extent. He was examined before the commissioner on several different occasions, these causes being before the commissioner for several months. When first examined and asked in regard to these notes he said that he would not say that the signatures thereto were his signatures, nor would he say that they were not his signatures. On another occasion he stated that he had signed some notes in blank and entrusted them to Mr. Dean, but that this was several years before when he was engaged in cutting another tract of timber for the White Oak Stave Company, and he knew that Dean had not misused any of these notes, and that he had never signed any other notes in blank and entrusted them to Dean. On still another occasion he stated that he had some notes out for some machinery and equipment that he had bought to carry on this particular work, and that he had signed some notes in blank and entrusted them to Dean for the purpose of renewing these obligations, but that all of these notes were dated, and that Dean had used them for the purpose for which they had been given him, and that he had never signed any other notes in blank and entrusted them to Dean. Finally, upon his last appearance before the commissioner, he stated unequivocally that he had not signed the notes in question. To rebut this evidence of Rawson, which culminated in the denial of his signature to the notes, we have the fact that when first advised that the bank held his obligations for an amount aggregating between twenty-five and thirty thousand dollars, he did not deny them or make any contention that they were forgeries, but stated that he had signed notes in blank and entrusted them to Dean, and expressed surprise that they had been used to that extent. There was also found in a drawer in Dean's desk, after Dean had left, seven blank notes signed by Rawson, the signatures to which he does not now deny. There was also introduced a number of people familiar with Rawson's signature who testified that

the signature to these notes was that of B. H. Rawson. Experts in handwriting were also introduced who compared the signatures to these notes with signatures admitted by Rawson, and who after such comparison pronounced the signatures to these notes to be the genuine signature of B. H. Rawson. It seems, indeed, very strange that Rawson, when confronted with the fact that the bank held his paper in such a large amount contented himself with making the explanation he did if in fact it was not his paper. It is beyond belief that a man in Rawson's circumstances could be confronted with twenty-five or thirty thousand dollars of paper upon which it was claimed he was liable, and that he would not at least deny liability therefor and assert that the same was a forgery, if such was the truth. His conduct on this occasion, as testified to by several witnesses, is entirely inconsistent with his subsequent statement that he had not signed these notes. His statements before the commissioner at different times were inconsistent with each other, and are also inconsistent with the fact that there were in Dean's possession at the time the bank was closed notes signed in blank by Rawson. We are clearly of the opinion that all of these notes bore the genuine signature of Rawson.

But it is argued that even though the signature to these notes is the genuine signature of Rawson, he should not be held liable therefor, for the reason that he entrusted the blank notes which he signed to Dean for a particular purpose, and that Dean used these notes for a purpose different from that for which they were entrusted to him. There is nothing in this contention. If Rawson signed these notes and entrusted them to Dean for a particular purpose, and Dean appropriated them to another use, Rawson must be held liable to holders without knowledge of the conditions upon which they were delivered by Rawson to Dean. *Frank & Adler* v. *Lillienfeld,* 33 Gratt. 377; *Douglass* v. *Scott & Frye,* 8 Leigh 43. It is insisted, however, that Dean, being the managing officer of the bank, and having knowledge of the purpose for which these notes were executed in blank by Rawson, his knowledge was the knowledge of the bank, and when the bank took these notes it therefore knew that

they were not being used for the purpose for which Rawson signed them, and knowing this, it cannot now seek to hold Rawson responsible therefor. This argument would be sound were it not for the fact that Dean was also the managing officer of the White Oak Stave Company, which company was interested in raising the money on these notes, and, as has been repeatedly held by this court, the knowledge of an officer of a banking institution, acquired in a capacity other than as its representative, of the infirmity or invalidity of paper acquired by such banking institution, through an instrumentality in which such officer is interested adversely to the interest of the bank, will not be imputed to the bank. *Bank* v. *Bryan,* 72 W. Va. 29, 78 S. E. 400; *Bank* v. *Ritz,* 70 W. Va. 409, 74 S. E. 679, 40 L. R. A. (N. S.) 156. We must, therefore, conclude that any information or knowledge which Dean had of the infirmity or invalidity of these notes is not imputable to the bank, and it is not shown that any other officer or agent of the bank had any knowledge or information in regard thereto at the time they were discounted. It follows that the circuit court erred in not sustaining the exceptions to the report of the commissioner, insofar as it failed to allow these notes as debts against B. H. Rawson.

There is another claim set up by the appellant Wagner, Receiver, against Rawson, amounting to $15.83, the same being an overdraft by Rawson at the time the bank was closed. We do not know why this $15.83 was not allowed. It is not charged that the same was not made by Rawson, nor is it contended by anyone that it did not in fact exist in Rawson's account, and that the bank had not actually furnished him this amount of money in addition to the amount of money deposited by him in the bank.

Appellant P. E. Wagner asserts a claim against the defendant White Oak Stave Company for the amount of the Rawson notes, claiming that as endorser of these notes it is liable to the bank for the amount thereof, and in addition to the claim against it as endorser of these notes, he claims another note of $5100.00 executed by the White Oak Stave Company to the bank. None of these claims were allowed by the commissioner. It appears that the notes now held by

Wagner, Receiver, were duly protested for non-payment at their maturity, and due notice thereof given. They are all endorsed by the White Oak Stave Company, by H. H. Dean, its treasurer. These notes were all discounted by the bank in the regular course of business and the proceeds thereof placed at the disposal of the White Oak Stave Company, which was in most instances placed to the credit of B. H. Rawson. The bank parted with the money in every instance, and if there was any irregularity or invalidity in the same, no officer or agent of the bank had any knowledge thereof except H. H. Dean, and, as before stated, his knowledge cannot be imputed to the bank. There appears to be no rea- son why this claim of Wagner, Receiver, against the White Oak Stave Company, consisting of the $5100.00 note of said company, presented by him, as well as the notes of Rawson endorsed by it, should not be allowed against the said company.

The notes held by the Central Banking & Security Com- pany, and the one set up by Drovers & Mechanics National Bank, and which it is insisted are valid claims against the said White Oak Stave Company as endorser thereof, stand upon the same ground as the notes held by Wagner, Re- ceiver. All of these notes were originally discounted by the First National Bank of Sutton, and by it rediscounted to the present holders thereof. These notes were taken by these banks in the regular course of business. They bore the en- dorsement of the White Oak Stave Company by its duly authorized treasurer, and there was nothing upon the paper to indicate that there was any infirmity or invalidity therein. It is also shown as in the case of the notes held by Wagner, Receiver, that these notes were discounted by the White Oak Stave Company, and the proceeds thereof received by that Company and paid over, if not entirely, at least to a large extent, to the credit of B. H. Rawson, and drawn out of the bank upon his checks. These notes were duly protested at maturity and due notice given of their presentment for pay- ment and protest for non-payment. The exceptions to the commissioner's report refusing to allow them should have

been sustained and the same allowed as valid debts against the White Oak Stave Company.

The notes held by Armstrong, Receiver of Farmers Bank & Trust Company, were also asserted as a claim against the White Oak Stave Company by reason of the fact that it was endorser on these notes. It does not appear from the record in this case that these notes were ever presented for payment and payment thereof refused, and due notice given of such presentment and protest for non-payment. In fact, we have the original notes before us, they having been brought to this court upon a writ of certiorari, and it does not appear that they were ever protested for non-payment, or that any notice was ever given of their presentment for payment, and that payment was refused. This being so, the White Oak Stave Company cannot be held liable as endorser thereon.

This leaves for consideration the claim of B. H. Rawson against the White Oak Stave Company which was allowed by the circuit court. Rawson testifies that the White Oak Stave Company is indebted to him in the amount allowed. He shows by his evidence that he and Dean as the managing officer of the White Oak Stave Company had a settlement of their affairs before he entered upon the contract upon which he was working at the time of the failure, and it was found that the White Oak Stave Company owed him $3000.00 at that time. He then shows by items how the stave company became indebted to him after that time, making a total of something over $29,000.00 that the stave company owed him. He swears that the stave company paid him, or that he drew checks which, together with all payments made to him by the stave company, amounted to a little more than $22,000.00, leaving the amount allowed by the court remaining unpaid. It is contended by the appellants that this evidence of Rawson is overcome when it is shown that he actually drew out of the bank more than $49,000.00 on checks signed by him, and which he does not now deny; that instead of there being a balance remaining unpaid to him he has been largely overpaid by the stave company. This contention leaves out of consideration, however, a fact that is shown in this case. that a large part of these checks, how many

does not appear, were drawn by Rawson before he entered upon the contract upon which he says he drew $22,000.00; and it also leaves out of consideration the fact that a large part of the money which Rawson drew out of the bank on his checks was raised on Rawson's own notes. The White Oak Stave Company could not use Rawson's notes to raise money with which to pay him and charge him with the amount so raised on his notes until it had paid the notes and relieved Rawson of liability thereon. There was no error in allowing this claim of Rawson.

It follows from what we have said that the decree complained of will be reversed insofar as it rejected the claims of appellants which we find to be valid debts against the defendants B. H. Rawson and White Oak Stave Company, and in all other respects it will be affirmed; and the cause remanded with direction to allow the claims of appellants to the extent that they are herein held to be valid debts, with costs to the appellants.

*Affirmed in part. Reversed in part. Remanded.*