The plaintiff, a national bank at Le Sueur, Minnesota, claims to have purchased the negotiable note in suit, "In due course."
The defendants were operating an elevator at Mooreton, North Dakota, at the time the note was executed, and they alleged in their answer that the payee E.L. Welch Co. was a corporation of large financial standing engaged in handling grain on commission in Minneapolis and Duluth. That it was a custom of commission merchants to keep an open account with country shippers, and credit thereon, the proceeds of such shipments and to charge to such account, all drafts drawn by said shippers on E.L. Welch 
Co.
That at the time of the execution of said note there was an oral agreement that E.L. Welch Co. would not negotiate said note but would keep it in the files in the office in Minneapolis, to show to the banks, with which it transacted its business; that said note was given as collateral to said open account, but was not to be negotiated. That said note was negotiated in breach of faith and under circumstances amounting to fraud. That at the time of the execution of the note defendants were not indebted to E.L. Welch Co., and there was no consideration for the note. That E.L. Welch Co. failed in March 1922, and was indebted to defendants at the time of such failure. There is evidence of an agreement in 1920, but no affirmative evidence of such an agreement in 1921.
At the close of defendant's testimony, plaintiff moved the court for a directed verdict claiming that there was no evidence to support defendant's defense, and that the evidence showed plaintiff to be a holder in due course. Motion denied, and at the close of all the testimony the motion was renewed, again denied, the jury returning a verdict for the defendants.
Plaintiff moves for judgment notwithstanding the verdict or for a new trial.
The trial court denied the motion, and plaintiff appeals from the judgment and from the order denying plaintiff's motion.
We will assume for the purpose of this opinion only, that the note in suit was delivered to E.L. Welch Co. to be shown to the banks with *Page 537 
which E.L. Welch Company was doing business and not to be negotiated, and that E.L. Welch, President of E.L. Welch 
Company, and president of the plaintiff bank, in breach of the agreement sold the note to the plaintiff bank. The plaintiff bank claims to be a holder in due course and if there was a defect in the title of the payee, such defect was unknown to the managers and active officers of the bank. It is conceded that the plaintiff bank purchased the note for full value and within a reasonable time after its execution. If there was a defect in the payee's title, notice of such defect must exist at the time the holder purchased the instrument. Knowledge of a defect acquired after the purchase for valuable consideration is not notice.
Under § 56 of the Negotiable Instruments Act (6941 C.L. 1913) "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith." Gibson v. First Nat. Bank, 196 Ky. 119, 244 S.W. 290; Madison Trust Co. v. Stahlman, 134 Tenn. 402, 183 S.W. 1012; Payne v. Zell, 98 Va. 294, 36 S.E. 379.
Under § 59 of the Uniform Negotiable Instruments Act, § 6944, Comp. Laws 1913, "Every holder is deemed prima facie to a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."
It is the settled law in this state that when a holder has shown that he purchased the note before maturity and for a valuable consideration, it is then presumed that he is a holder in due course. First Nat. Bank v. Flath, 10 N.D. 281, 86 N.W. 867; American Nat. Bank v. Lundy, 21 N.D. 167, 129 N.W. 99; Walters v. Rock, 18 N.D. 45, 115 N.W. 511.
"Where a purchaser of a negotiable note which was obtained by fraud paid value for it, he will be entitled to recover in an action upon it against the maker, unless it is proved that he purchased with actual notice of defect in the title, or in bad faith, implying guilty knowledge *Page 538 
or wilful ignorance." King v. Doane, 139 U.S. 166, 35 L. ed. 84, 11 Sup. Ct. Rep. 465.
In the case at bar, the cashier, Mr. Weiss, had sole charge of and acted for the bank in the purchase of the note in suit. Mr. Weiss testifies on cross-examination under the statute, that he purchased the note in suit in good faith for full value and the draft for full amount is in evidence as an exhibit; that the plaintiff bank was organized in 1894 with E.L. Welch as president, and out of 250 shares of stock, Welch owned 70 shares. He was president of two other banks. During the grain season E.L. Welch Co. borrowed all that it could at the plaintiff bank, and then sold notes outright to the bank, and, on account of having borrowed to the limit the notes were sold to the bank without recourse. During all the years from the organization of the plaintiff bank in 1894 there never was any trouble or loss on any of the notes purchased by the plaintiff bank from E.L. Welch 
Company. There was no notice of any defect in the title of the payee unless the knowledge of E.L. Welch, President of the Bank, and President of E.L. Welch Company, can be imputed to the bank.
Several times during the trial the court intimated that that was the only question in the case. It is the principal contention of the defendants and, in denying a motion for a new trial, in memorandum opinion, relying upon the case of Grebe v. Swords,28 N.D. 330, 149 N.W. 126, the trial court held that the knowledge of E.L. Welch, as president of the plaintiff bank, was knowledge to the bank. In the case of Grebe v. Swords, supra, the court says:
"It affirmatively appears that in the discounting of such paper Jones, as cashier, is the only person who acted for the bank. He turned over the notes, and gave, or caused himself to be given, credit therefor on the books of such bank. He was the bank in the transaction, and whatever was done by his assistant cashier was done purely in a clerical way, under the directions of Jones. . . . This being true, the knowledge of Jones as to the infirmity in this paper was the knowledge of the bank. Emerado Farmers Elevator Co. v. Farmers Bank, 20 N.D. 270, 29 L.R.A.(N.S.) 567, 127 N.W. 522."
The test is that if the bank official is acting for the bank, his knowledge of the infirmity of the paper will be presumed to be the knowledge of the bank. *Page 539 
The evidence in the case at bar shows that E.L. Welch was active managing head of the large commission house of E.L. Welch Company, with officers in Minneapolis and Duluth. He was also president of three banks. He went to Le Sueur on an average of four times a year. If there was a meeting of the board of directors while he was in Le Sueur he met with them. The cashier testified that he did not know how E.L. Welch financed its business; that the note was sent by E.L. Welch to the bank through the mail; that he passed upon the question of buying the note; he knew the defendants, Bailey and Sether; knew that they had two elevators; he had been in one of them and he knew that their paper was good and he purchased it without any hesitancy.
If the note was negotiated in breach of faith amounting to fraud it was done in the interests of E.L. Welch Company, and not in the interests of the plaintiff bank. E.L. Welch acted for E.L. Welch Company in selling the note. Michie on Banks 
Banking, vol. 1, p. 830 states the rule as follows:
"The rule seems to be that knowledge or notice upon the part of an officer or agent, with respect to discounts and securities, when such matters are within the scope of his duties or agency, are chargeable to the bank, and bind it in subsequent proceedings. But the rule cannot hold good when the officer is also acting in part for himself and in his own behalf. The bank whose president has knowledge of a defect in a guaranty on negotiable bonds at the time that it, acting through him, makes a loan thereon, is not charged with notice, he being a part owner in the bonds and the loan being in part for his benefit. The knowledge of an officer in a bank, being also a member of its discount committee, who takes part in discounting a note made to him individually, for an unlawful purpose, in which he participates, is not imputable to the bank."
To the same effect see the following authorities, State v. Emery, 73 Okla. 36, 6 A.L.R. 234, 174 P. 770; Union State Bank v. First Nat. Bank, 122 Ark. 612, 184 S.W. 411; Guaranty State Bank v. Bland, ___ Tex. Civ. App. ___, 189 S.W. 546; Rusmissell v. White Oak Stave Co. 80 W. Va. 400, L.R.A. 1917F, 453, 92 S.E. 672; Corcoran v. Snow Cattle Co. 151 Mass. 74, 23 N.E. 727; Wardlaw v. Troy Oil Mill, 74 S.C. 368, 114 Am. St. Rep. 1004,54 S.E. 658; Forbes v. First Nat. Bank, 21 Okla. 206, 95 P. 785; McPherrin v. Tittle, 36 Okla. 510, *Page 540 
44 L.R.A.(N.S.) 395, 129 P. 721. In Innerarity v. Merchants' Nat. Bank, 139 Mass. 332, 52 Am. Rep. 710, 1 N.E. 282, the court said:
"While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating."
If a bank officer sells to the bank a note owned by him his knowledge is not imputed to the bank, where another acts for the bank. Citizens Bank v. Kriegshauser, 211 Mo. App. 33, 244 S.W. 107; Dominion Trust Co. v. Hildner, 243 Pa. 253, 90 A. 69; First Nat. Bank v. Dikeman, 96 Kan. 765, 153 P. 559.
The case at bar comes within the exception that the knowledge of E.L. Welch was not knowledge to the plaintiff and the plaintiff's motion should have been granted, and a new trial awarded.
CHRISTIANSON, Ch. J., and BIRDZELL, JOHNSON, and NUESSLE, JJ., concur.