## STATE v. EMERY.

No. 8812—Opinion Filed Aug. 13, 1918.

(174 Pac. 770.)

1. **Bills and Notes — Negotiable Note — Bona Fide Holder.**

In an action upon a negotiable note by the holder thereof, who acquires it for value before maturity without notice, against the payor, from whom the note was obtained for an illegal consideration, knowledge of such facts as would put a prudent man upon inquiry is not sufficient to defeat the right of the holder to recover.

2. **Same—Bad Faith—Evidence.**

The evidence in this case examined, and the circumstances surrounding the transaction are not sufficiently strong for it to be said that bad faith may be reasonably inferred therefrom.

3. **Banks and Banking—Purchase by Bank —Bona Fide.**

A vice president of a bank, who is not in active charge of the business of the bank, acting for himself in a transaction with the bank, must be regarded as a stranger to it, dealing as if he had no official relation with it, and knowledge upon his part as to the illegal consideration of the note assigned by

him to the bank is not sufficient to impute knowledge to the bank.

4. **Bills and Notes — Discounting Note — Bona Fide Purchaser.**

The mere discounting of a negotiable note for a customer by a bank and crediting the amount to be paid therefor to the customer's account does not of itself make the bank a purchaser for value but such transaction creates the relation of debtor and creditor, and in such a state of case the bank will be deemed a holder in due course only when it has paid the full amount to be paid therefor to the assignor of said note before notice of any equities or defenses against the same.

5. **Bills and Notes—Illegal Consideration.**

Under section 4105, Rev. Laws 1910, the title of a person who negotiated an instrument is defective when he obtains the same for an illegal consideration.

6. **Bills and Notes—Defective Title—Burden of Proof.**

And under section 4109, Rev. Laws 1910 when the title is defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course, and where the bank purchases a negotiable note and deposits the money to the credit of the seller, the burden is on the bank to prove that it had paid the entire consideration for said note to the seller before it acquired knowledge of any infirmities or defenses.

7. **Payment—Burden of Proof.**

Where the sole issue is one of payment, the burden rests upon the party pleading the same to prove it, and the evidence in this case examined, and held, that the same fails to establish payment in whole or in part.

(Syllabus by Hooker, C.)

Error from County Court, Washita County; L. R. Shean, Judge.

Action by the State of Oklahoma against W. A. Emery. Judgment for defendant, and plaintiff brings error. Reversed.

S. P. Freeling, Atty. Gen., William H. Zwick, Asst. Atty. Gen., and M. M. Thomas, for State Banking Board, for the State.

Smith, Jones & Smith, for defendant in error.

Opinion by HOOKER, C. In February, 1915, the banking department of the state of Oklahoma took charge of the Farmers' & Merchants' Bank of Mountain View, Okla., and thereby acquired the assets of the bank, among which were the two notes involved in this action. Thereafter the state of Oklahoma instituted a suit upon said notes against W. A. Emery in the county court of

Washita county. "Exhibit A" is a note for the sum of $550 of date April 18, 1914, and due December 1, 1914, bearing interest at 10 per cent. per annum from maturity until paid, signed by W. A. Emery and payable to one T. E. Givens. and the other note is for the sum of $80.25, of date April 19, 1913. and due October 1, 1913, executed to the Mountain View Trading Company or order with 10 per cent. interest from maturity. signed by W. A. Emery and assigned by the Mountain View Trading Company to said bank. The petition in this case alleged the execution and delivery of said notes by said W. A. Emery, and the transfer and assignment thereof before maturity by the payees to said bank, and the acquisition of said notes by the banking department of the state of Oklahoma. The answer filed consisted of a general denial and a plea of usury charged as to the transaction between Emery and Givens. and as a result of which there is excessive interest or usury. It is alleged that the total consideration of said note was usurious interest on said note executed by Emery to Givens, and the same is pleaded as a defense to this action. A plea of payment was made as to the renewal of the note mentioned above. The plaintiff filed a reply in the form of a general denial to the answer of the defendant, and in March, 1916, the cause was tried.

From the evidence it appeared that in December, 1912, W. A. Emery executed his note to T. E. Givens in the sum of $500 due December 1, 1913, with 10 per cent. intereest from date, and that on the 16th day of April, 1913, T. E. Givens assigned and transferred said note to the Farmers' & Merchants' Bank of Mountain View, Okla., and that the bank on that date in consideration of that note deposited to the credit of said T. E. Givens with it the sum of $500; that said note was not paid when due; and that a short time after the maturity thereof said note was renewed by the execution of the $550 note sued upon in this cause.

The evidence discloses that T. E. Givens is payee in said note, and the one who assigned the same to the bank was vice president of the bank, but was not in active charge of the operation thereof at the time the bank purchased this note; that he had not been an active officer in the bank since 1908, but continued to act as vice president until January, 1914, and that in his negotiations with the bank, President L. C. West acted for the bank; and that Givens did not have anything to do with conducting the affairs of the bank in this or other transac-

tions so far as the discounting of paper was concerned after 1908.

It is further shown that West, president of the bank, had no personal knowledge of any defense or equity that Emery might have against the note in question at the time he purchased the same for the bank, but while he had a general knowledge of the methods of Givens in charging excessive interest to his customers and patrons, yet he did not have any specific knowledge of the transactions between Emery and Givens in reference to the note in question.

The evidence also discloses that Emery did not make any defense or charge of usury until after the maturity of the second note; that he did not contend to the bank when the first note matured that there was any usury embraced therein, but renewed the same when it matured, and raised the defense of usury only after the maturity of the note, upon and after the bank had become insolvent and its assets taken over by the state.

The testimony of Emery in this action discloses that he had been dealing with Givens for a number of years, and had paid him excessive interest for the use of money. and that upon final settlement in 1912, he executed the $500 note in question, and that after deducting the illegal interest he did not at that time owe him anything, and that the total consideration for this $500 note was illegal interest. His testimony gives in detail the amount of money loaned at various times by Givens to him, and the usury charged, and his testimony is not disputed, and, if true, clearly shows that the $550 note in question had for its consideration only illegal interest.

At the conclusion of the evidence here by an agreement of the parties the case was withdrawn from the jury and submitted to the court, and the court, after taking the matter under advisement, rendered a judgment in favor of the defendant below, from which judgment the state has appealed.

The state contends that the bank was a holder in due course before maturity for a valuable consideration without notice of any equity or defense, and that under the evidence here it was entitled to a judgment for the full amount of said note. Section 4102, Rev. Laws 1910, provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face;

"Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"Third. That he took it in good faith, and. for value;

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 4104, Rev. Laws 1910, provides:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

Applying the provisions of section 4102, Revised Laws 1910, to the facts in this case, we must determine whether the bank is an innocent purchaser before maturity for a valuable consideration and without notice of the defense and equity urged against this note.

There is no contention here that the instrument is not complete and regular upon its face, or that the bank became the holder of it before it was due, and without notice, that it had been previously dishonored. But it is a disputed fact as to the bank acquiring this note for value and without notice of defenses.

It is the contention of the defendant in error that, inasmuch as West, the president of the bank, had a general knowledge of the methods of Givens in transacting his business with his customers, that was sufficient to put the bank upon inquiry, and, inasmuch as Givens himself was the vice president of the bank, that these facts were sufficient to impute knowledge to the bank of the illegal consideration of said note. Inasmuch as Givens was not an active officer of the bank, and in no manner had charge of the discounting of notes for it, we are of the opinion that the bank is not bound or charged with knowledge by reason of his conduct, nor do we believe that the general knowledge of West, as to the methods of Givens in the transaction of his business, was sufficient to impute bad faith to the bank in the purchase of this note.

In the case of First Nat. Bank v. Dikeman, 96 Kan. 765, 153 Pac. 559, it is said:

"A bank which buys a negotiable note is not prevented from becoming a holder in due course by the fact that its cashier, through whom the purchase is made, was a director of the bank to which the note was given, at the time of its execution: he having no actual notice of any defect or defense. Nor is such bank prevented from becoming a holder in due course by the fact that its cashier knew the note was given as the result of a settlement between the maker and the payee, and that, knowing of the pendency of negotiations to that end, he had agreed with the payee to purchase the note."

And in Michie on Banks and Banking, vol. 1, p. 830, it is said:

"The rule seems to be that knowledge or notice upon the part of an officer or agent, with respect to discounts and securities, when such matters are within the scope of his duties or agency, are chargeable to the bank and bind it in subsequent proceedings. But the rule cannot hold good when the officer is also acting in part for himself and in his own behalf. The bank whose president has knowledge of a defect in a guaranty on negotiable bonds at the time that it, acting through him, makes a loan thereon, is not charged with notice, he being a part owner in the bonds and the loan being in part for his benefit. The knowledge of an officer of a bank, being also a member of its discount committee, who takes part in discounting a note made to him individually, for an unlawful purpose, in which he participates, is not imputed to the bank."

And in Davis v. Boone County Deposit Bank (Ky.) 80 S. W. 161, the Court of Appeals of Kentucky said:

"Where the interest of the president of a bank, who was also its attorney, in the discount of a note sued on, was adverse to the bank, his knowledge of an infirmity in the paper was insufficient to charge the bank therewith."

And in Union State Bank of Shawnee v. First Nat. Bank of Huntsville. 122 Ark. 612, 184 S. W. 411, the Arkansas Supreme Court said:

"Where the president of an insurance company, who had knowledge that its agent had misrepresented the value of corporate stock sold, was also the president of the bank to which the certificate of deposit of the proceeds of the sale of the stock in another bank was assigned, the president's knowledge of the fraud is not imputed to the bank, if he, in assigning the certificate to the bank, acted only for the insurance company."

And in Guaranty State Bank v. Bland, 189 S. W. 546. it is said:

"A bank taking a note, was not taxed with notice of facts, relative to fraud in the inception of the note, known to its cashier, whose knowledge was acquired when acting solely in his individual capacity, for himself and another concern, in which the bank had no interest."

See, also, Rusmissell v. White Oak Stove

Co. (W. Va.) 92 S. E. 672, L. R. A. 1917F. 453; Corcoran v. Snow Cattle Co., 151 Mass., 74, 23 N. E. 727; Wardlaw v. Troy Oil Mill, 74 S. C. 368, 54 S. E. 658, 114 Am. St. Rep. 1004. .

And in 10 Cyc. 1063 the law is laid down as follows:

. **"If** a corporate officer or agent acts avowedly for himself in a transaction with the corporation, he is regarded as a stranger to the corporation, dealing as if he had no official relation with it."

And further in said Cyc.:                    - .

. "If, therefore, it is desired to charge the corporation with a knowledge of such facts, affirmative evidence must be given that the officer has made a disclosure thereof to other and disinterested officers of the corporation, whose knowledge may properly be said to be that of the corporation, or at least that he made such disclosures as ought to have put them on inquiry."

And is is further said in Cyc.:

"When therefore an officer, director or agent of a corporation deals with the corporation for himself in his private capacity, any uncommunicated knowledge which he may have in respect to the transaction will not be imputed to the latter by reason of his possession of it."

This court in the case of Forbes v. First Nat. Bank of Enid, 21 Okla. 206, 95 Pac. 785, said:

"In an action on a negotiable draft by the holder thereof, who acquired it for value before maturity, without notice, against an indorser from whom the draft was obtained by fraud, knowledge of such facts as would put a prudent man upon inquiry in reference to the draft is not sufficient to defeat the right of the holder to recover, and the court may direct a verdict in favor of the holder, when the circumstances surrounding the transaction are not sufficiently strong for it to be said as a matter of law that bad faith may be reasonably inferred therefrom."

And in McPherrin v. Tittle, 35 Okla 510. 12 Pac. 721, 44 L. R. A. (N. S.) 395, the court says:

"Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or of circumstances sufficient to put him upon inquiry, will not defeat his title; that result can be produced only by bad faith on his part."

See, also, Bank of Columbus v. Landis, 37 Okla. 530, 132 Pac. 1101; Bank v. Tobin, 39 Okla. 96, 134 Pac. 395.

The question arises here as to whether under this evidence it can be said that the bank was the holder of this note for value.

The court has laid down the rule that the mere discounting of an undue note for a customer by the bank and crediting the amount to be paid therefor to the customer's account does not of itself make the bank a purchaser for value, but such transaction creates the relation of debtor and creditor.

And under section 4104, Rev. Laws 1910, a bank in that state of case will only be deemed a holder in due course when it has paid the full amount agreed to be paid for said note, or, in other words, when the money thus deposited to the credit of the assignor has been paid to him. See Morrison v. Bank, 9 Okla. 697, 60 Pac. 273, and Bank v. Ambruster, 42 Okla. 656, 142 Pac. 393, and Bank v. Ambruster, 59 Okla. 120, 157 Pac. 1146.

The facts here disclose that when the bank bought this note from Givens it deposited the amount thereof to his credit, and the relation of debtor and creditor was thereby established to this extent, and under the rule thus announced the bank could not become an innocent holder for value unless it paid to the seller of the note the amount due for the same before notice of infirmities and defenses were acquired by it. Section 4105, Rev. Laws 1910, provides:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereof, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to fraud."

Under the evidence here and under the finding of the court the total consideration for the note in question was usury and illegal. That being true then under the statute above quoted, the title of Givens to said note was conclusive within the meaning of said statute. And under section 4109, Revised Laws 1910, when the title is defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. That being true, then it was incumbent upon the state here to show that the bank had paid out the entire consideration of said note to Givens before it acquired knowledge of the infirmities or defenses thereto. This it did not do.

Upon the trial of this cause the state introduced in evidence the small note sued upon here, to which there was only a defense of payment, and no evidence was introduced to establish the payment. It was

therefore error for the court to overrule the demurrer of the state to this evidence of the defendant below as to the second cause of action, and render judgment against the state.

For this reason the judgment of the lower court is reversed, and this cause is remanded for a new trial.

By the Court: It is so ordered.