### SANLEY v. WILKINSON.

No. 15022—Opinion Filed Sept. 16, 1924.

Rehearing Denied Oct. 14, 1924.

(Syllabus.)

**1. Bills and Notes—Bona Fide Purchasers.**

Bad faith, not merely notice of circumstance sufficient to put a prudent man upon inquiry, is necessary to defeat the recovery by the purchaser of a negotiable promissory note for value in due course before its maturity.

**2. Same—Suspicious Circumstances — Due Inquiry.**

If one contemplating the purchase of a negotiable promissory note before its maturity then has a knowledge which excites his suspicion and leads to inquiry, and he in good faith makes such inquiry of the maker of the note as a reasonably prudent man would ordinarily make under the circumstances, and such maker informs him that the note is valid and will be paid by him at maturity, he may rightfully act on the information thus received, purchase the note and claim the position of a bona fide purchaser.

**3. Evidence—Opinion Evidence—Agency — Failure to Object.**

"Evidence that the party is or is not an agent is a mere conclusion, but the witness may state the fact and circumtances concerning the various transactions between him and the alleged principal, leaving the court and the jury to determine under the facts disclosed whether or not he was such agent." Ford Motor Co. v. Livesay, 61 Okla. 231, 160 Pac. 901. However, when such incompetent evidence is admitted without objection, it must be given the same consideration as if it were legal evidence.

**4. Same.**

In this case S., the plaintiff, denied in his pleadings that M. was his agent, but when S. was testifying as a witness on his own behalf, counsel for the adverse party asked him if M. was his agent and he answered him in the affirmative without making objection thereto. No effort was made by S. or his counsel to have the question and answer stricken from the record. This testimony is the statement of a legal conclusion and is incompetent, but since it was received in evidence by and with the consent of S., it must be given its natural force and effect and it, therefore, constitutes such prima facie proof of agency as to require the submission of that issue to the jury.

Error from District Court, Major County; James B. Cullison, Judge.

Action by Daniel Sanley against J. H. Wilkinson. Judgment for defendant and plaintiff brings error. Reversed and remanded for new trial.

Ernest F. Smith, for plaintiff in error.

John F. Curran and C. B. Wood, for defendant in error.

LYDICK, J. This is an action upon three promissory notes begun in the district court of Major county by Daniel Sanley as plaintiff against J. H. Wilkinson as executor of the last will and testament of J. W. Wilkinson, deceased. The notes were executed by J. W. Wilkinson and were payable to one C. M. Spurlock. They were by him indorsed in blank and transferred to L. F. Messman. who in turn, indorsed same in blank and transferred same to the plaintiff. In his petition the plaintiff pleads that he is an innocent purchaser of the notes in due course before maturity without notice of

any defects. The defendant claims that the notes were obtained wholly without consideration and by the fraud of C. M. Spurlock, and denied that plaintiff was an innocent purchaser thereof. The case was tried to a jury, and upon its verdict for the defendant the court rendered its judgment accordingly. Plaintiff appealed.

In his answer the defendant says "that said J. W. Wilkinson received no consideration for said note; that said notes were given for certain stock represented by the said C. M. Spurlock to be of great value and guaranteed by him to sell within one year for more than double the amount of the notes." Defendant alleges that those representations were false and were made in bad faith by Spurlock, the stock being wholly without value, and were relied upon by the maker of the notes. No other representation or fraud is alleged.

The consideration given by Spurlock to Wilkinson for each of the notes was a written conveyance of a certain designated fractional interest—

"in and to an undivided one-eighth royalty of the oil and one-eighth of the proceeds from gas produced and reserved to the lessors under the terms and conditions of one certain oil, gas and mining lease" ·

—on lands therein described. The only witness to the representations made by Spurlock to J. W. Wilkinson was J. H. Wilkinson, his son, who as executor is the defendant here. The only testimony he gave on this point is that Spurlock said "that he was selling royalty"; "that he was going to have us millionaires in a short time"; "there was no chance to lose"; "he would sell these units (of royalty) before the time ran out and we would never have to pay a cent down on them at all." There is in the record no evidence of Spurlock making any false representation of an existing fact. There is no testimony that the price was fixed at which Spurlock should resell this royalty nor that he could not have resold same nor did not intend to do so nor that he was ever given permission to do so. There is no evidence that he did not believe that oil would be found on the lease sufficient to make interested parties wealthy, and such a contingency, under the circumstances, is not altogether unusual in the development of "wild-cat" oil territory in Oklahoma. There is no evidence that Spurlock had or claimed to have any scientific information, or other knowledge, of the value of this royalty other than or superior to that possessed by Wilkinson. The assignment shows on its face that the royalty was limited to the rights

under the one lease and the lease was then valid and enforceable and the assignment was genuine and just what it purported to be. From the record it appears that Spurlock was the owner and had the right to sell and convey the royalty which he assigned to Wilkinson. At the time of the transfer of this royalty, the lessee in the lease referred to therein had a rig on the leased premises, doing some, but very little, active work in drilling a well for oil or gas, and the lease was then in full force and effect by virtue of an extension of the time to drill therein made by lessee with lessor. The land was in "wild-cat" territory and there had been no development thereon.

Sometime after the sale of this royalty, the lessee and its assignee abandoned the lease, and upon its expiration the assigned royalty interest thereunder likewise expired. The lessee in the lease named was the Eau Claire Oil & Gas Company, a corporation, of which C. M. Spurlock was secretary and treasurer. At the time this royalty was sold to Wilkinson, one L. F. Messman was not a stockholder, officer, or employe or otherwise connected with it. Spurlock, during his term, was selling similar royalties to others and Messman was buying many of the notes which Spurlock received therefor and negotiating them to his customers and patrons. After all these transactions were had, a partnership was formed by Spurlock, Messman, and one Wyatt, who took over the leases, drilled the well several hundred feet deeper, to a depth of about 1,200 feet, and then abandoned the project, for reasons not disclosed.

L. F. Messman testified that at the time he purchased these notes from Spurlock he knew they had been given for royalty, but knew nothing of any representations or agreements made by Spurlock in his transactions with Wilkinson, nor the amount of royalty sold. His evidence is uncontradicted. He testified that he purchased these notes for himself, paid for them with his own money, and thereafter, and before the maturity of the notes, he sold them to the plaintiff, Daniel Sanley, at a five per cent. discount. For years he had been buying notes and selling them to Sanley, who is a well-to-do farmer in Nebraska. He denied he was acting as agent for Sanley in these matters. Messman said that before buying these notes signed by Wilkinson, he went to Wilkinson to investigate his financial responsibility, exhibited the notes to him, and Wilkinson said he had signed the notes and would pay them at maturity. He did not disclose to Messman that Spurlock had guar-

anteed to resell the royalty, make him a millionaire in a short time, or that he had made any other representations whatsoever. His story stands uncontradicted.

Daniel Sanley testified by deposition in Nebraska, and his purchase of these notes, before maturity, in good faith for value in due course, without actual knowledge of any defects therein, is made clearly to appear. He said that for years he had been making investments in notes and farm loans in Oklahoma through L. F. Messman; that Messman would buy these notes and securities and indorse them over to him, attach them to a sight draft for the price to be paid therefor by Sanley and which he would pay when presented to him by the bank. Nowhere in the record does evidence appear to show that Sanley had ever authorized Messman to do any act for him or that he had ever agreed to buy any note purchased by Messman unless he was satisfied so to do after Messman had purchased and paid for the note with his own money and they could then agree upon the price Sanley should pay. The evidence does not negative the theory that Sanley and Messman were independent dealers in notes and securities, the latter selling to the former in that capacity. Messman so testified positively and Sanley's evidence is not to the contrary except that on cross-examination he answered in the affirmative a question calling for a legal conclusion and not competent primary facts, the question being this, to wit: "He was your agent and representative here?" The question was asked and answered without objection by the plaintiff or his attorney, and no motion was made to strike the same.

The plaintiff moved the court for a directed verdict, which was overruled, and he excepted. This is assigned as error.

The facts proven do not constitute a legal fraud, but we are not inclined to turn the case on this point, because the plaintiff in error in his brief makes the most surprising statement that, for the purpose of making his argument in this court, it may be considered that Spurlock obtained the notes by fraud.

From competent evidence of primary facts appearing in the record, we doubt that Messman was the agent, in its legal sense, of this Nebraska farmer, Daniel Sanley, in purchasing these notes, but we find that without objection by plaintiff's attorney Sanley, on cross-examination, said that he was. Sanley is an aged and uneducated farmer and likely did not know enough about law to know what primary facts must

exist to constitute Messman his legal agent so that knowledge of Messman would be binding upon him. Agency, in this case, is a question of law to be determined by the court upon the primary facts, and such facts only should have been elicited from the witness upon the point, and the answer of the witness merely states a legal conclusion and was incompetent. See Ford Motor Co. v. Livesay, 61 Okla. 231, 160 Pac. 901. This evidence was admitted, however, without objection and stands without any effort of the plaintiff to strike it from the record. When incompetent evidence is thus admitted, it must be given its natural effect. This evidence, therefore, is sufficient to make such prima facie proof of agency as to require that issue to be submitted to the jury under proper instruction. See vol. 23, C. J., title "Evidence," sec. 1783.

The defendant says that Messman, at the time he purchased these notes, had knowledge of the alleged fraud committed by Spurlock. There is no evidence in the record to show such fact and the record clearly proves the contrary. The facts which Messman knew when he bought these notes were hardly sufficient to put a prudent man upon inquiry, but even if they were, a recovery on the notes thus purchased would not be thereby defeated unless bad faith on Messman's part were proven. So we held in Citizens Savings Bank v. Landis, 37 Okla. 530, 132 Pac. 1101; Cline v. First Nat'l Bank, 67 Okla. 260, 170 Pac. 472; Southwest Nat'l Bank v. Todd, 79 Okla. 263, 192 Pac. 1096; Stevens v. Pierce, 79 Okla. 290, 193 Pac. 417; Security Trust & Savings Bank v. Gleishmann, 50 Okla. 441, 150 Pac. 908; State v. Emery, 73 Okla. 36, 174 Pac. 770.

But if the law were otherwise, recovery can be had on the notes here. Messman inquired of Wilkinson, before he bought the notes, and Wilkinson told him the notes were good and would be paid at maturity. What more could be expected of him? The alleged fraud consists merely of Spurlock's statement that there was no chance to lose and that Wilkinson would be quickly made a millionaire. Messman had no reason to suspect these statements had been made, and if Wilkinson failed to so inform him when he knew Messman was about to buy these notes, he should not now complain. The royalty had a value and even Messman did not know how much, for he did not know the amount of royalty sold and the value of the royalty was dependent upon the finding of oil. There was a valid consideration to support the notes given. Wilkinson, with his eyes open, made just such a wild and

reckless speculation as has often made millionaires quickly in Oklahoma. He played dollars against millions and lost, but he received a valid and legally sufficient consideration to support the notes. It is not proven that Messman, as agent of the plaintiff, had knowledge of any fraud or acted in bad faith in buying these notes for Daniel Sanley. Without proof of knowledge of the alleged fraud or bad faith on the part of Daniel Sanley or L. F. Messman, his agent, the plaintiff and not the defendant should recover.

In Modern Woodmen of America v. Michelin 101 Okla. 217, 225 Pac. 163, we said:

"In order for the verdict of a jury to stand. there must be in the record such competent evidence that if uncontradicted and unimpeached will constitute prima facie proof of every fact essential as a matter of law to the establishment of the cause of action or defense upon which it is based."

Measured by this rule, the verdict must fall.

The judgment of the lower court is reversed, and the case remanded for a new trial.

NICHOLSON, BRANSON, MASON, WARREN, GORDON, and JOHNSON. JJ. concur. McNEILL, C. J.. and HARRISON, J., absent.