## MAZE v. AUSTIN et al.

No. 18647. Opinion Filed Jan. 22, 1929.

Markley & Neece, for plaintiff in error.

Claud Briggs, for defendants in error.

JEFFREY, C. This action was begun by E. A. Maze against Josephine Austin, R. L. Weir, administrator of the estate of Charles Austin, deceased, the Conservative Loan & Trust Company, the receivers of said company, S. J. Cochran, Ollie Belle Austin, and Josephine Cole Austin, as guardian of Ollie Belle Austin, a minor, as defendants, upon one first mortgage real estate note for the principal sum of $2,000, certain past-due interest coupon notes, to foreclose a real estate mortgage given to secure said notes and to quiet title. The notes and mortgage were executed by Charles Austin and Josephine Austin, husband and wife, in favor of the Conservative Loan & Trust Company, December 8, 1921. At the time said notes and mortgage were executed, the Austins executed an appli-

cation for a loan for that amount. The application for a loan designated the Conservative Loan & Trust Company agent for the borrowers, to secure said loan. On February 8, 1922, the note and mortgage were transferred to the Collins Investment Company of Fond du Lac, Wis. On February 11, 1922, the Collins Investment Company sold and transferred said notes and mortgage to plaintiff, E. A. Maze. The written assignment of the note was executed by the Conservative Loan & Trust Company direct to plaintiff. The Austins never received any consideration for the note and mortgage. Plaintiff claimed to be a holder in due course of the notes and mortgage sued upon. Josephine Austin and R. L. Weir, as administrator of the estate of Charles Austin, filed a general denial to plaintiff's petition, and also denied that plaintiff was a bona fide purchaser. They alleged that said notes and mortgage were given without consideration; and that the Collins Investment Company was the agent of the plaintiff for the purpose of securing said note and mortgage. The cause was tried to a jury, and a general verdict was returned in favor of the defendants. Motion for new trial having been overruled, plaintiff has appealed, and assigns as grounds for reversal five separate specifications of error. However, all of these specifications of error may be dealt with under plaintiff's principal contention that he became a holder in due course of the notes and mortgage sued upon under the uncontradicted evidence in the case, and therefore his motion for a directed verdict should have been sustained.

Plaintiff assigns as error the admission of certain evidence over his objection. This evidence was by E. K. Knouse, and to the effect that a certain note and mortgage, which had been surrendered by plaintiff for the notes and mortgage in question, had no market value on account of the condition of the title of the property mortgaged. The evidence, if admissible at all, could only be admitted on the question of whether plaintiff acted in bad faith in taking the note and mortgage in question, and not on the question of whether plaintiff paid value therefor. We think this question need not be separately considered, since it must necessarily be incidentally considered hereafter, and, in addition thereto, counsel for defendants admits that the value of the promissory note is the collectable value, and not the market value, as contended for by counsel for plaintiff. Section 7722, C. O. S. 1921, defines a "holder in due course" as follows:

"A 'holder in due course' is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face;

"Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"Third. That he took it in good faith and for value:

"Fourth. That at the time it was negotiated to him, he had no notice of any infirmity in the instrument, or defect in the title of the person negotiating it."

We dismiss the first two requirements under the foregoing section without any discussion thereon, since it appears beyond a doubt that plaintiff met both of these conditions, and no showing having been made to the contrary. However, it is seriously contended that plaintiff did not take the notes and mortgage in question for value. The evidence on the question of consideration is that, on December 8, 1921, Charles Austin and wife executed the notes and mortgage in question. On February 8, 1922, the Conservative Loan & Trust Company sold and transferred the same to the Collins Investment Company, which concern the evidence shows to have been an agent or broker for the Conservative Loan & Trust Company in handling numerous other loans as well as this one. Plaintiff, having previously purchased another loan from the Collins Investment Company for the principal sum of $2,000, was notified by the Collins Investment Company to bring in his note and mortgage for payment. This loan also originated with the Conservative Loan & Trust Company, and was known as the "Emils loan." Plaintiff testified that he was notified by the Collins Investment Company to bring in the Emils loan so that it could be paid up. The evidence otherwise showed that good title had never been obtained on the land mortgaged to cover the Emils loan because of a missing heir, and also because of a prior mortgage which could not be removed; and that the Conservative Loan & Trust Company had requested the Collins Investment Company to recall this loan, and try to exchange the Austin loan for it. However, plaintiff testified that, in response to notice from the Collins Investment Company, he brought in the Emils loan, and that a representative of the Collins Investment Company asked him if he would like to reinvest the proceeds from the Emils loan in another good loan for the same amount; that he was shown the Austin loan, which

was for the same amount as the Emils loan, and he agreed to take it and surrender the Emils loan. Plaintiff testified that he never at any time had any business transaction with the Conservative Loan & Trust Company; that he had paid $2,000 for the Emils loan; that he knew nothing of the Austins not having received any consideration for the note and mortgage, but that, upon examination, the loan appeared to be a good investment, and that he surrendered the old loan papers for the new. The evidence shows that plaintiff at least believed, when he took the Emils note and mortgage to the Collins Investment Company, that the money with which to retire the loan was there, and that he could take the money or another loan for the same amount. On the value of the Emils loan, counsel for defendant, over the objection of plaintiff, asked witness, E. K. Knouse, as follows:

"State what the market value of the Emils note, secured by the mortgage in question, was at the time, to wit, February 7, 1922, taking into consideration the condition of the title. A. It wasn't worth anything on account of the condition of the title."

There was some other evidence tending to show that the title to the land mortgaged to secure the Emils note was defective. There is no evidence whatever that the note itself was uncollectable. "Value," as used in the Negotiable Instruments Act, is defined by section 7695, as follows:

"'Value' is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

As to the adequacy of the consideration to support one's claim to be a holder in due course, 8 C. J. paragraph 349, states that it is immaterial that the consideration is of the most trifling nature. In 9 Cyc. 365-6, the rule is stated as follows:

"So long as it is something of real value in the eye of the law, whether or not the consideration is adequate to the promise is generally immaterial. The slightest consideration is sufficient to support the most onerous obligation; the adequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the courts when it is sought to be enforced. The giving of a receipt, the surrender of an old note, or other document, on which there was no liability and which was of no legal value, the execution of a release, although the promisee had nothing to release, the showing of a deed, or parting with a letter have been held sufficient consideration."

See, also, Duncan v. First National Bank of Healdton, 122 Okla. 58, 251 Pac. 60; Sykes v. Chadwick, 18 Wall. 141, 21 L. Ed. 824; Churchhill v. Bradley, 58 Vt. 406, 56 Am. Rep. 563, which support the text. Under the foregoing section of the statute and the authorities cited, we conclude that the Emils note, for which plaintiff had paid $2,000, constituted value as a debt and was sufficient to meet the third requirement under section 7722, supra.

Is there any evidence to the effect that, at the time plaintiff took the notes and mortgage in question, he had notice of any infirmity in the instruments, or defect in the title of the person negotiating them? It is not here contended that either the Conservative Loan & Trust Company or the Collins Investment Company was the agent of plaintiff in the transaction, and there is no evidence tending to establish such a fact. The evidence shows that when the Austin loan was submitted to plaintiff for consideration, there was attached to it a loan application signed by the Austins on December 8, 1921, together with an appraisement by the Conservative Loan & Trust Company, and certificate guaranteeing title of the same date. It is contended by counsel for defendants that there are recitations in these instruments which should have put plaintiff on notice of the fact that the Austins received no consideration for the execution of the notes and mortgage. Counsel refers to a recitation in the loan application, whereby the Conservative Loan & Trust Company was authorized to secure a loan for that amount, and also to the fact that all of these instruments were executed the same day. But these are not sufficient under the circumstances to prevent plaintiff from becoming a holder in due course.

If it may be said that the application for the loan gave plaintiff notice that the Austins were seeking a loan through these loan companies; that the loan had not been procured; and that these companies had no right to surrender the notes and mortgage except upon receipt of money, still plaintiff's position would not be altered under the circumstances of this case. Plaintiff and an official of the Collins Investment Company testified that at the time plaintiff produced the Emils loan, he was entitled to be paid $2,000: that plaintiff was asked if he would reinvest this money in another loan, and, after examining the Austin loan, he agreed to take it and let his money go on that loan. From plaintiff's point of view, and it is in this light we must now consider the evidence, it was an investment of money,

the same as if he collected the money on the Emils loan and then repaid it for the Austin loan. Section 7726, C. O. S. 1921, being a part of the Negotiable Instruments Act, is as follows:

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

This court has uniformly held, in applying the foregoing section, that suspicion, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or of circumstance to put one upon inquiry, is not sufficient to defeat the rights of one claiming to be a holder in due course. It is also uniformly held that that result can be produced only by a showing of actual knowledge of the infirmity or defect, or knowledge of such facts that one's action in taking the instrument amounted to bad faith. Circumstances or suspicions may be so cogent and obvious that to remain passive would amount to bad faith, but, in the absence of actual knowledge, bad faith or the absence of it is the test. Forbes v. First National Bank of Enid, 21 Okla. 206, 95 Pac. 785; McPherrin v. Tittle, 36 Okla. 510, 129 Pac. 721; Conqueror Trust Co. v. Bayless Drug Co., 75 Okla. 288, 183 Pac. 419; Sanley v. Wilkinson, 107 Okla. 54, 229 Pac. 574; Gaither v. First National Bank of Muskogee, 113 Okla. 111, 239 Pac. 461; Loomis v. Cole, 119 Okla. 203, 249 Pac. 327.

It is not contended that plaintiff had actual knowledge of there not having been paid the Austins any consideration for the notes and mortgage. And we find no evidence tending to show bad faith on the part of plaintiff in taking the notes sued upon, but, on the contrary, the evidence shows quite clearly that plaintiff acted in good faith in the transaction without any notice of defects or infirmities which would prevent him from occupying the position of a holder in due course. The mere fact that plaintiff elected to take the notes and mortgage instead of the value of the Emils loan in money would dispel any notion that he did not act in good faith. Although plaintiff's title to the instruments was challenged, we conclude that plaintiff discharged the burden placed upon him, and showed that he became a holder in due course of the notes sued upon, and that his motion for a directed verdict should have been sustained. The judgment of the trial court is reversed, and the cause remanded, with directions to the trial court to enter judgment for the plaintiff on the notes and mortgage sued upon.

BENNETT, HERR, DIFFENDAFFER, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) 3 R. C. L. p. 1066. See "Bills and Notes," 8 C. J. §699, p. 482, n. 74, §710, p. 501, n. 18; §1376, p. 1062, n. 63.