**C. L. McMAHON, Jr., Appellant,**

v.

**CARIBBEAN MILLS, INC., a Haitian corporation, Appellee.**

**No. 7406.**

United States Court of Appeals Tenth Circuit.

June 3, 1964.

642

Appeal From The United States District Court For The Northern District of Oklahoma. Luther F. Bohanon, Dist. Judge.

Robert D. Hudson, Tulsa, Okl. (Villard Martin, Jr., Tulsa, Okl., was with him on the brief), for appellant.

Joseph A. Sharp, Tulsa, Okl. (Jenkins, Anson, Spradley & Gilchrist, and Wilson Hanna, Dallas, Tex., Best, Sharp, Thomas & Glass, and Jack M. Thomas, Tulsa, Okl., were with him on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

This is an action by Caribbean Mills, Inc., a Haitian corporation, against C. L. McMahon, Jr., the appellant here, to recover upon nine negotiable promissory notes executed in Haiti by appellant and one R. Paul Weesner. There were ten notes originally, each payable in Florida to a Jean F. Laham, and each in the face amount of $10,500. Appellee purchased the notes from the payee prior to the maturity of any of the notes and for a valuable consideration. Appellant was notified that appellee intended to purchase the notes, and he wrote a letter to appellee stating that the notes would be paid on or before the due date at Dallas, Texas. One of the notes was paid.

Appellant sought to purchase an interest in a hotel and casino in Haiti from one R. Paul Weesner and an agreement for the purchase was reached between the two. It was also understood that Mr. Jean F. Laham would see to it that a gambling concession from the government of Haiti was granted to appellant and Mr. Weesner. This concession was so granted. At the closing of the transaction the notes were executed by the appellant and Mr. Weesner, naming Mr. Laham as payee, and delivered to the payee. The witnesses testified that the payee was a personal friend of the President of Haiti and was influential with many of the government offi-

cials in Haiti. There was testimony that when the government desired some new industry, or changes in existing industries, it often engaged Mr. Laham to find some person or company interested, and for such services he would be paid a commission.

At the time of closing, appellant was represented by counsel from Oklahoma and by local counsel in Haiti. Soon after the execution and delivery of these notes, Mr. Laham approached Arthur D. Haas, president of the appellee corporation, whom he had known for some time and who knew his relationship with the government of Haiti, with the request that the appellee purchase the notes in question. Appellee did agree to purchase these notes prior to the due date of any of them. The notes at the discounted rate were paid for by appellee by cash delivered to Mr. Laham in Dallas, Texas, and the notes were duly endorsed. From the cash paid, Mr. Laham received $25,000 and a Mr. Morrison, to whom two of the notes had been endorsed, received payment on his notes, and the remainder of the money was delivered by Mr. Laham to another person who, the witnesses testified, was secretary to the President of Haiti and head of the Secret Police. Appellee knew that the notes in question were given as part consideration of one-half interest in the hotel and gambling concession.

Appellant urges that appellee is not a holder in due course, and also since part of the transaction involved a gambling concession, the notes under Oklahoma law are void and against public policy. Also he urges that by reason of the connection of Mr. Laham with the transaction and the purpose for which the payment was made, the notes are void and unenforceable as against public policy. Appellant also contends that the purchase of the notes was made for the reason that the Haitian governmental authorities would look with favor upon the business operations of the appellee conducted in Haiti, and that all such matters constituted a breach of the public policy.

The court concluded that appellee purchased the notes as a business transaction, and that it would not have purchased the notes but for the letter from appellant to Caribbean Mills, stating that the notes would be paid. The court found that the appellant was fully aware of all of the details of the transaction, was represented by counsel, and that he made timely payment of the first note. The court also noted that the appellant had written a letter to appellee asking permission to postpone payment of one of the notes.

The court below held that under Oklahoma law, the appellee was a bona fide purchaser of the notes in discussion, was a holder in due course, and gave judgment for the appellee.

■ Appellant's first argument is that the lower court erred in that it made no findings of specific facts, but only conclusions of ultimate facts, and as a result, appellant had no opportunity to request proposed findings and conclusions or to object to such findings and conclusions. Rule 52(a) reads in part: "If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." A memorandum opinion was filed by the trial court and the requirements of the rule were met. Appellant did not seek to amend the findings in the opinion nor to otherwise draw the trial court's attention to the objections he here makes. Appellant's argument on this point is without merit.

■ Appellant next argues that his defense below was misunderstood by the court, and he states that this defense was that the giving of the notes was conditioned upon obtaining governmental approval of the casino or they were given as a bribe, and the president of the appellee corporation knew this when his corporation bought the notes. Appellant argues that the court's misunderstanding of his defense is manifested by its finding that "the defendant's position is that since part of the transaction involved a gambling concession, though legal in

Haiti, the notes under the law of Oklahoma are void and a violation of public policy." The opinion of the trial court shows it considered appellant's defense. It refers at some length to the circumstances and individuals associated with the payment. The trial court found: "There is no showing in the evidence in this case that plaintiff had notice of any infirmity or defect, if any, in the instruments, or that it acted in bad faith. In fact, there is no showing that there was any defect in the instruments." The trial court had previously indicated that it was not convinced that the bribery allegation was true. The court specifically found there was no notice, and that there was no showing of a defect anyway. The finding as to notice was enough to decide the case.

■■ Appellant next argues that the law of Texas, not Oklahoma, determines whether Caribbean is a holder in due course. The notes were executed in Haiti, made payable in Florida, and transferred to appellee in Texas. Before their purchase and transfer, the appellant had written to appellee that the notes would be paid to it in Texas. The question whether a holder is a holder in due course is governed by the laws of the state where the note was transferred, or of the forum, need not be decided. The Oklahoma law applied in the trial court was expressed in Sharp v. Dunlap, 176 Okl. 329, 55 P.2d 971, where the court said: "Circumstances which would excite suspicion in the mind of a prudent person are not sufficient, in the absence of bad faith, to defeat the rights of one claiming to be a bona fide holder in due course of negotiable paper." Other Oklahoma cases support the same rule. Loomis v. Cole, 119 Okl. 203, 249 P. 327; American Finance Corp. v. Spurgin, 183 Okl. 556, 83 P.2d 568 (1938). The Texas statutes are essentially the same as those of Oklahoma, that is, §§ 52 and 56 of the Negotiable Instruments Law. Appellant cites Citizens Bridge Co. v. Guerra, 152 Tex. 361, 258 S.W.2d 64. The court there discussed "bad faith" as it relates to the determination of a holder in due course.

The court quoted from Fenner v. American Surety Co. of New York, Tex.Civ. App., 156 S.W.2d 279, 282, where it was stated: " * * * the term 'bad faith' * * * means that the person taking the instrument must have had knowledge of such substantial facts and circumstances as to create in his mind a suspicion that there was something wrong with the title of the person from whom he takes it, to the instrument itself, or to the money represented by such instrument, combined with an intentional disregard of and refusal on the part of the taker * * * to learn the facts from the means of knowledge which he knows are at hand." The language in the Citizens Bridge case was quoted at length in Century Indemnity Co. v. First National Bank, Tex.Civ.App., 272 S.W.2d 150 (1954); Kone v. Security Finance Co., 158 Tex. 445, 313 S.W.2d 281 (1958). In the early Oklahoma case of City State Bank of Hobart v. Pickard, 35 Okl. 243, 129 P. 38 (1912), the court applied this rule which apparently was derived from Swift v. Smith's Adm'rs, 102 U.S. 442, 26 L.Ed. 193: "One who purchases mercantile paper before due, from another who is apparently the owner, although he may know facts and circumstances that would cause one of ordinary prudence to suspect that the person from whom he obtained it had no interest in it, can lose his right only by actual notice or bad faith." See also State v. Emery, 73 Okl. 36, 174 P. 770, 6 A.L.R. 234 (1918); and American Finance Corp. v. Spurgin, 183 Okl. 556, 83 P.2d 568 (1938). The court in Maze v. Austin, 135 Okl. 71, 273 P. 994 (1929), at 996 said: "This court has uniformly held in applying [§ 56 of the Negotiable Instruments Law] * * that suspicion or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or of circumstances to put one upon inquiry, is not sufficient to defeat the rights of one claiming to be a holder in due course. It is also uniformly held that that result can be produced only by a showing of actual knowledge of the infirmity or defect, or knowledge of such facts that one's ac-

tion in taking the instrument amounted to bad faith." This language is essentially the same as that quoted from the Texas case, Citizens Bridge Co. v. Guerra, supra. It is not a peculiar circumstance that Oklahoma and Texas have similar rules in this regard. The rule in the two states and the wording particularly in the Oklahoma case of Maze v. Austin, supra, closely resembles the rule stated in virtually all the states. It is noted that the lower court did not recite the rule fully, but only that part to the effect that suspicious circumstances do not amount to bad faith, as it apparently felt this was sufficient to dispose of the case. There was conflicting testimony as to whether appellee had actual notice of any infirmity or defects, if any, in the instruments. The court found in favor of the appellee on this point, and there is substantial evidence to support this finding. This being so, it will not be disturbed here.

■■ The final contention made by appellant is that the notes are void because the payment was contingent upon obtaining approval by the government of Haiti to the transfer of the gambling concession, and that such payments are contrary to the public policy of Oklahoma and void with no ratification possible. Appellant argues without regard to whether the payment to Mr. Laham was a bribe, the contingency of obtaining government action is contrary to public policy and void in Oklahoma even though there is no suggestion of corruption, citing Hare v. Phaup, 23 Okl. 575, 101 P. 1050; Chambers v. Coates, 176 Okl. 416, 55 P.2d 986. The lower court found that there was no showing of any defect in the instruments, and there is substantial evidence to support such a finding. The lower court in its opinion stated in effect that it was not persuaded by the bribery allegations, and that the notes had no defects. Its reference to ratification was not an indication that the notes were void or voidable, and on this appeal the case is disposed of on the findings of the trial court and the matter of ratification need not be discussed.

Affirmed.