**CITIZENS BANK, BOONEVILLE, AR-KANSAS, Appellant,**

v.

**NATIONAL BANK OF COMMERCE, TULSA, OKLAHOMA, Appellee.**

No. 7449.

United States Court of Appeals
Tenth Circuit.

June 16, 1964.

Rehearing Denied Aug. 25, 1964.

David H. Sanders, Tulsa, Okla. (Bert M. McElroy and Fred A. Smith, Tulsa, Okl., with him on the brief), for appellant.

James C. Pinkerton, Tulsa, Okl. (Carl Pinkerton, Tulsa, Okl., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

MURRAH, Chief Judge.

This is a suit on a dishonored cashiers check, brought by the Arkansas-payee-bank against the Oklahoma-maker-bank. The cashiers check was issued in payment of a forged check drawn on the Oklahoma bank. The defense is that, in the circumstances of this case, the cashiers check was issued without consideration and in reliance upon the implied representation of the presenting bank that the forged check, and its indorsement by the payee, were genuine.

The trial Court gave judgment for the defendant Oklahoma bank on the ground that the cashiers check sued upon was issued without consideration because first, by its indorsement, the Arkansas bank warranted not only the prior indorsement, but the genuineness of the maker's signature as well; and second, the Arkansas bank was not a holder in due course for the reason that (1) the Arkansas bank accepted the forged check for collection; and (2) at the time of presentment, the Arkansas bank knew or should have known of its infirmity.

Since under Oklahoma law a payee of a cashiers check cannot be a holder in due course, all of the valid defenses to the suit on the cashiers check are available to the Oklahoma-maker-bank. See: First State Bank of Booker, Texas v. First National Bank of Beaver, Oklahoma (10 CA), 319 F.2d 338; and Mid-Central Towing Co. v. National Bank of Tulsa, Okl., 348 P.2d 327. If, therefore, the indorser bank guaranteed the genuineness of the forged check, it did not constitute valid consideration for the cashiers check and the matter ends there. But, we cannot agree that under the applicable law of Oklahoma, the indorser bank warranted the signature of the drawer to the drawee bank.

It is the generally accepted rule that a bank of deposit is bound at its peril to know the signature of its depositors; and, that while an indorser of a check for presentment guarantees all prior indorsements, it does not warrant the genuineness of the maker's signature to the drawee bank. When a holder in due course of a check presents it to the drawee bank and it is accepted, the bank cannot thereafter recover the money from the person to whom it is paid or from any of the indorsers. See: 48 O.S. § 143; 12A O.S. § 3–417; Cherokee National Bank v. Union Trust Co., 33 Okl. 342, 125 P. 464; and Riggs National Bank of Washington, D. C. v. Dade Federal Savings & Loan Ass'n., 5 Cir., 268 F.2d 951. The rule has its genesis in Price v. Neal, 3 Burr. 1354, 97 Eng. Rep. 871, decided two centuries ago, and is based upon policy consideration to the effect that the depositary bank should be made the place "where all prior mistakes or forgeries should be detected, settled, or corrected, once for all;" and, that "payment by such bank to such holder should be treated as final." Commercial & Savings Bank Co. of Bellefontaine, Ohio v. Citizens National Bank, 68 Ind.App. 417, 120 N.E. 670, 672. If the drawee bank may not recover monies paid for the forged check, a priori it may not plead the forgery as a basis for its

defense of lack of consideration in this suit to recover on the cashiers check which it issued in exchange for the forged instrument. In sum, the forgery is neither a sword nor a shield in the hands of the drawee bank. The drawee bank is presumed to know its depositor's signature, and whether it sues to recover for the payment of the forged check or is defending against a suit on its promise to pay, in the nature of a cashiers check, it is precluded from denying the genuineness of the drawer's signature. The rationale of Price v. Neal, supra, is applicable, and it follows that if the Arkansas bank can be said to be a holder in due course of the forged check, it constituted consideration for the issuance of the cashiers check.

When this suit arose, Oklahoma negotiable instruments law defined a holder in due course as one who had taken the instrument under the following conditions: " * * * 3. [t]hat he took it in good faith and for value; 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." 48 O.S. § 122.[1] Contrary to the trial Court's views, we hold for the reasons hereinafter stated that the Arkansas bank took the check in good faith and for value, and did not act in bad faith in presenting it to the Oklahoma bank for payment. The Arkansas bank was, therefore, a holder in due course.

We give controlling effect to Oklahoma's statutory definition of holder in due course. In so doing we assume, in the absence of a clear indication to the contrary, that Oklahoma would follow the Restatement of Conflict of Laws, which pertinently provides that the "validity and effect of a transfer of a negotiable instrument are determined by the law of the place where the negotiable instrument is at the time of its transfer." Restatement, Conflict of Laws, § 349. The

forged check was apparently made in Arkansas and was initially transferred there. But, it was drawn on the Oklahoma bank, where it was presented and accepted. The transfer which gave rise to this suit thus occurred in Oklahoma. But, inasmuch as Oklahoma's substantive definition of a holder in due course refers us back to the place of taking, i. e., Arkansas, we must look to Arkansas law for standards of good faith, value, and notice of infirmity.

Arkansas' Uniform Commercial Code defines "good faith" as "honesty in fact in the conduct or transaction concerned." 7C Arkansas Stat. § 85–1–201(19). And, further provides: "A person has 'notice' of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists." 7C Arkansas Stat. § 85–1–201(25). Similarly, Oklahoma's statutory law at the time of this negotiation provided that the Arkansas bank "must have had actual knowledge * * * or knowledge of such facts that [its] action in taking the instrument amounted to bad faith." 48 O.S. § 126. Mere suspicion, or the knowledge of circumstances tending to incite suspicion in the mind of a prudent person or put him on inquiry, does not amount to a bad faith taking. See: Maze v. Austin, 135 Okl. 71, 273 P. 994; Sharp v. Dunlap, 176 Okl. 329, 55 P.2d 971; and McMahon v. Carribbean Mills, Inc. (10 CA), 332 F.2d 641. And, in the absence of bad faith, we must conclude that under either Oklahoma or Arkansas law, the instrument was taken in good faith. See: Holland Banking Co. v. Booth, 121 Ark. 171, 180 S.W. 978; Rose v. Spear, 187 Ark. 168, 58 S.W.2d 684. See also: Commercial Trust Co. of N. J. v. Kealey, 4 Cir., 92 F.2d 397, and Arkansas and Oklahoma cases there cited. Manifestly, if under the law of either state the Arkansas bank is charge-

1. Oklahoma has since adopted the Uniform Commercial Code, which was in effect in Arkansas at the time of the subject trans- action and which, for our purposes, is not materially different.

able with knowledge that the check was a forgery, it could not have been taken or presented in good faith, and the bank could not, therefore, be a holder in due course under Oklahoma law.

The operative facts are not in dispute. The Arkansas bank held a past due note and cattle mortgage, executed by one Gilbert, who presented to the bank a check payable to him in the sum of $15,250, drawn on the Oklahoma bank and signed by "Phil Talley." On the left-hand corner of the check was written "146 head of cattle." Gilbert told the banker that the cattle had been "sold and delivered," and suggested that the banker call the drawee bank. In Gilbert's presence, the banker called the cashier of the Oklahoma-drawee-bank, told him that he had a check drawn on his bank by Phil Talley for $15,250, and asked if there were sufficient funds to pay it. The Oklahoma banker advised the Arkansas banker that Phil Talley was a depositor and reliable customer of their bank, and that there were sufficient funds in the account to pay the check, but that he could not guarantee "that the money would be there when the check got there." The Arkansas banker thereupon delivered Gilbert's note to him, and after conferring with one of the Directors, decided to go immediately to Tulsa, Oklahoma, about 150 miles away, to cash the check. Upon arrival, the Arkansas banker presented the check to the Oklahoma banker with whom he had talked on the telephone. The Oklahoma banker looked at the check, inquired if the Arkansas banker knew the signature of Gilbert, the payee who had indorsed the check, and asked if he would indorse the check for his bank. The Arkansas banker replied that he knew Gilbert's signature and that he would indorse the check for the bank, which he did. The Oklahoma banker thereupon took him to the cashier's window where the subject cashiers check was issued. After visiting a few minutes, the Arkansas banker left. Before the close of business, the forgery was discovered and the Arkansas bank was notified immediately and be-fore the Arkansas banker returned to his bank.

There is nothing on this record to support the trial Court's conclusion that when the Arkansas bank took the check, it knew or had reason to know of its infirmity. There is evidence to the effect that the Arkansas bank had filed suit against Gilbert on other obligations, and that the bank was concerned about Gilbert's indebtedness. The Arkansas banker did not advise the Oklahoma banker of Gilbert's reputation as a bad credit risk, nor did he give any reason for not processing the check through regular banking channels. It seems too plain for doubt, however, that the Arkansas banker drove 150 miles to Tulsa to present the check, as a precaution to insure payment. The fact that Gilbert was delinquent at the bank, and had been sued by the bank on unpaid obligations is, of course, evidence of his bad credit reputation in banking circles. But, the fact that a payee of a check is known to be a bad credit risk affords no basis for inferring or suspecting that he is a forger, or that an instrument presented by him to the bank was a forgery. This is especially true when considered in the light of the fact that Gilbert suggested that the Arkansas banker call the drawee bank. The Arkansas bank took all the precautions that should be required of any similar institution, when it immediately phoned the drawee bank to inquire whether the maker of the check had an account in an amount sufficient to cover the check. Any other requirement would cast a burden upon commercial transactions which they can ill afford.

As we have seen, conclusions with respect to good or bad faith ordinarily rest in fact. When however, as in our case, good or bad faith is judged by the statutory standards of actual or implied notice, the trial Court's conclusion with respect to bad faith cannot be sustained.

The trial Court specifically found that the Arkansas bank took the forged check "for collection only," as the agent of payee-Gilbert, hence not for value and, therefore, could not be a holder in due

'course. Apparently in support of this conclusion, the Oklahoma bank invokes 7C Arkansas Stat. § 85–4–201, relating to the bank collection process, which provides: "(1) Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final * * * the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional." It then refers to 7C Arkansas Stat. § 85–4–211, which provides: "(1) A collecting bank may take in settlement of an item * * *(b) a cashier's check * * *." It is suggested that since under the statute, the cashiers check was taken in provisional settlement of the forged check, and since the cashiers check was not paid, any credit given by the Arkansas bank is provisional and may be revoked. See: 7C Arkansas Stat. § 85–4–212. On this premise, the Oklahoma bank argues that since the Arkansas bank has recourse against payee-Gilbert, notwithstanding the discharge of his debt, it may not recover from the Oklahoma-drawee-bank on the cashiers check. It is plain that under § 85–4–201, the Arkansas bank was the collecting agent of payee-Gilbert, regardless of its status or ownership with respect to the item; the settlement was provisional; and, the Arkansas bank has recourse against Gilbert. And, it is readily apparent that if, as the agent of its customer, the Arkansas bank cannot be a holder in due course of the negotiated item, the trial Court is correct even though, as we have seen, the check was taken in good faith.

No case has been cited and we have found none on this critical point,[2] but as we understand the scheme of Article 4 of the Uniform Commercial Code, relating to bank deposits and collections, the Arkansas bank may be a holder in due course while acting as a collecting agent for its customer. 7C Arkansas Stat. § 85–4–209 specifically provides that "[f]or purposes of determining its status as a holder in due course, the [collecting] bank has given value to the extent that it has a security interest in an item * * *." A bank has a security interest in an item "(b) * * * to the extent of the credit given whether or not the credit is drawn upon and whether or not there is a right of chargeback * * *." 7C Arkansas Stat. § 85–4–208. See: Universal C. I. T. Credit Corp. v. Guaranty Bank & Tr. Co., D.C., 161 F.Supp. 790. Undoubtedly, credit was given for the forged check by the discharge of the pre-existing debt. While this is new statutory law to the extent that the statute is applicable to our situation, it is in consonance with pre-existing Arkansas law and the generally prevailing rule to the effect that if the negotiated instrument is taken in satisfaction of an antecedent debt, the taker is a holder for value and in due course. See: 7C Arkansas Stat. § 85–3–303; 48 O.S. § 72; 12A O.S. § 3–303; Tabor v. Merchants Nat. Bank, 48 Ark. 454, 3 S.W. 805; Southern Sand & Material Co. v. People's Sav. Bank & T. Co., 101 Ark. 266, 142 S.W. 178; Newell Contracting Co. v. McConnell, 156 Ark. 558, 246 S.W. 854; and Annot., 59 A.L. R.2d 1173. We finally conclude that the cashiers check was given for valid consideration, and the Arkansas bank is entitled to judgment thereon.

The judgment is reversed with directions to proceed accordingly.

2. The commentators on the Uniform Commercial Code, and particularly with reference to the Article on bank deposits and collections, do not seem to have reached or considered the precise question presented. See: Abercrombie, "Article 4: Bank Deposits And Collections," 15 Okl.Law Rev. 287; Penney, "Summary of Articles 3 And 4," 48 Cornell L.Q. 47; and Clarke, "Bank Deposits And Collections: Article IV," 16 Ark.L.Rev. 45.